JUDGE PETEBS
delivered the opinion op the court.
Weathers Smith, the father of'Mrs. Susanna Rogei’s, conveyed three hundred acres of land in Bath County by a deed of indenture, substantially as follows: “ This indenture, made this 29th day of November, 1818, between Weathers Smith of Bourbon County and Commonwealth of Kentucky of the one part, and Susanna Rogers of Bath County and Commonwealth aforesaid of the other part, witnesseth: That the said Weathers Smith, for and in consideration of the sum of six shillings, current money of Kentucky, to him in hand paid before the sealing and *522 delivery of these presents — the receipt whereof he, the said Smith, doth hereby acknowledge himself to be fully satisfied and paid — he hath bargained, granted, and confirmed, and by these presents doth bargain and confirm, unto the said Susanna Rogers and her present heirs a certain tract or parcel of land, containing three hundred acres, situated and lying and being in the County of Bath, on the waters of Mox Branch,” etc.; “to have and to hold all and singular the improvements and appurtenances thereto belonging unto the said Susanna Rogers and her present heirs forever;” and concludes with a covenant of warranty of title to Mrs. Rogers and “her present heirs.”
At the date of the deed Mrs. Susanna Rogers was the widow of Charles Rogers, and had four children; viz., Eliza Rogers, who afterward married Thomas T. Shreve, George W. Rogers, John G. Rogers, and Susanna Rogers, who married P. R. Bean, and after his death married Mr. N. Asberry, whose wife she now is.
Mrs. Susanna Rogers in 1817 intermarried with David T. Foster, and by that marriage she had one son, W. W. Poster, and died in 1850, leaving her husband surviving her, who died in the summer of 1861. John G. Rogers died in 1830, over twenty-one years of age, intestate, unmarried, and childless, leaving his mother, two sisters, his brother of the full blood, and his half brother his heirs.
In June, 1862, this suit in equity was brought by Thomas T. Shreve and the two children of his wife Eliza, late Rogers, she having previously died — to-wit, Charles W. Shreve and Mary, who had intermarried with S. S. Goodloe, her husband joining in the suit — Asberry and wife, and the heirs of George "W". Rogers, he having died intestate, against said William W. Poster, for a partition of said three hundred acres of land conveyed by the deed of the 29th of November, 1813, aforesaid; of *523 certain slaves remaining at the death of D. J. Foster, whom the plaintiffs claim to have belo'nged to their ancestor Charles Rogers, and the price for which said W. W. Foster sold two of the slaves, who were a portion of said decedent’s estate; and for rents and hires since the death of David T. Foster, who, as is conceded by plaintiffs, had a life-estate in said land and slaves, under agreements and conveyances which will be again referred to; and also against Joseph and Alvin Stevens for a tract of about two hundred and twenty acres of land on Highstone, in Bath County.
As W .W. Foster, in an amended pleading, claims that under the deed of the 29th of November, 1813, aforesaid, his mother took a present joint interest with her four children, and that he was entitled to that interest by virtue of a conveyance from her and her husband, and that she also took as heir to her son John G. Rogers two ninths of his undivided share in said land on his death, which also passed to him by said conveyance, it first becomes necessary to determine what estate or interest Mrs. Foster took in said land under the deed of her father of 1813. And this question we regard as virtually settled by this court in "Webb & Harris v. Holmes, &c., 3 B. Mon. 404. This deed, like the one partially copied in the case referred to, is a deed inter partes, in which Weathers Smith is the party on one side and Susanna Rogers on the other. The persons designated in the deed as “ her present heirs ” are not made parties thereto, nor are those terms used in the caption, which by the designation of the parties is intended to confine the deed to those who are named in exclusion of all-others as contracting parties; and as strangers who are not parties to a deed can derive no legal interest under it, or maintain covenant on it, so it is well established that those who are not *524 parties to a deed can take no present interest under it, but they may take by way of remainder.
The foregoing is an extract from the opinion, supra, at the end of which the authorities relied upon as sustaining the principle are cited.
So to give to the deed any operation as to those persons designated therein as “ the present heirs ” of Mrs. Rogers, by which terms we do not doubt the grantor intended to include the four children of his daughter Mrs. Rogers, they must be construed to take in remainder only, as they can not take a present joint interest with their mother; and such construction should be given to the deed as to give some beneficial interest to these children, for whom, as we think, the grantor intended to make some provision; and by giving this construction to the deed they are all provided for: the mother to take a life-estate, and the children an estate in remainder in fee after the termination of the life-estate. The court below so construed the. deed, and we approve it.
On the 1st of February, 1884, David T. Foster and wife, Susanna Bean, late Rogers, and P. R. Bean, her husband, and George W. Rogers and wife, in consideration that Foster and wife, and the children of Mrs. Foster by her first -husband Charles Rogers, had agreed upon the manner of dividing the estate of Charles Rogers, deceased, including the land and slaves of said decedent, and also the lands descended to Mrs. Foster from her father Weathers Smith, and from her mother, and sister Lydia Smith — the said persons named being the first party — conveyed to William W. Foster an undivided fifth part of the whole of the three hundred acres of land conveyed by Weathers Smith to Mrs. Foster and children by the deed of the 29th of November, 1813, aforesaid; and also conveyed to him a like interest in certain slaves *525 therein named, Foster and wife reserving a life-estate in the land and slaves; and they also conveyed to said "W. W. Foster absolutely another tract of one hundred and twelve acres in 'said county. In the caption of this deed said T. T. Shreve and wife are named as grantors; but they did not sign and execute the same, as was intended they should do doubtless when it was written; for T. T. Shreve, by a writing executed to "W. W. Foster as early as the 27th of April, 1827, covenanted that he and his wife, so soon as she should arrive at the age of twenty-one years, would convey and secure to said D. T. Foster and his wife each a life-estate in said three hundred acres of land and the slaves David, Polly, and Louisa, and that at the death-of Foster and wife said three hundred acres of land, and said slaves and their increase, should be equally divided between the four children of said Charles Rogers and the said "W. "W. Foster, each taking- one fifth. And by a <leed dated August 24 1830, said Shreve and wife conveyed to W. W. Foster, in consideration of an agreement entered into between D. T. Foster and wife and the children of said Charles Rogers, deceased, upon the manner of the division qf the estate of said decedent, including the slaves and also the lands descended to Mrs. Foster from her father and sister, “all the right and title which they have in and to an undivided fifth part of one undivided half of a certain tract or parcel of land situate, lying, and being in the County of Bath,” etc.; being the three hundred acres of land aforesaid, and' the one undivided fifth of said slaves above named. At the date of this deed John G. Rogers, one of the four children of Charles Rogers, was living; and as the caption of the deed aforesaid has his name inserted, it is apparent that it was prepared for him to unite with them in it; and if he had done so Foster would *526 have taken the one half of a fifth from Mrs. Shreve and her husband, and the saíne from J. G. Rogers, in the undivided half of said three hundred acres, making for the two thirty acres, the one half of the one fifth of the three hundred acres; but as the deed was executed and now stands, Shreve and wife themselves have conveyed to Foster thirty acres out of the three hundred acres; but W. W. Foster, in his original answer filed in the case, says that an error occurred in said deed in conveying one fifth of one half, when it should have been for one fifth of the whole tract. This conveyance is made subject to the life-estate of D. T. Foster and wife.
From the peculiar phraseology of the deed of Bean and wife and G. W. Rogers and wife to W. W. Foster, it is very clear that they do in fact convey to him sixty acres out of said three hundred acre tract, and according to the letter of the two deeds Foster would be entitled to ninety acres out of said tract, which seems from extrinsic facts not to have been the intention of the parties. But it is an unexplained fact in this record, that while Shreve and wife attempt to correct what they call a mistake in said deed as to the negroes, and say that they then convey all their right and title to one undivided fifth part in and to said negroes to W. W. Foster instead of the fifth of their undivided half, and that it is understood that their interest in the negroes is equal and the same as said W. W. Foster’s, nothing is said in said memorandum of any mistake in the deed as to the land, although the attention of the grantors was called directly to the deed.
"Whether from the unskillfulness in the preparation of the deeds, or from other causes which at this remote period from the transactions can not now be known, it is certainly true that the rights of these parties are left in confusion and uncertainty. But, looking at the design *527 and purposes of the actors in these transactions as developed by the pleadings and documents filed, the safest and most rational conclusion is that the intention of all the parties was that at the death of D. T. Foster and wife, or of the survivor of them, the three hundred acres should be equally divided between the four children of Mrs. Sogers by her first husband and her son by her last marriage. This was the agreement before the death of John Gr. Sogers. On his death his mother took two ninths of one fifth in said tract; his surviving brother and two sisters each two ninths of his interest; and W. W. Foster, his half brother, one ninth.
Appellant, in his amended answer, filed in March, 1865, states that by a family arrangement, made in 1827 by his father and mother for him and themselves and the children of Charles Sogers and the said Shreve, his father and mother were to have a life-estate each in the three hundred acres; and all the land and slaves owned by Foster and wife, and all the land and slaves derived from Charles Sogers, deceased, including the remainder estate in said three hundred acres, “ should be equally divided between the children of said Susanna Foster of her first husband and himself , the said W. W. Foster; which arrangement he in that answer insists shall be carried out. And that seems to have been the object of the parties when the deeds of George W. Sogers, Bean and wife, and Shreve and wife, before referred to, were executed; which allegation is strongly confirmatory of the conclusion to which we have come i
It now remains to determine whether appellant acquired the interest of G. W. Sogers in his life-time in the three hundred acre tract. It is alleged by appellant, in his cross-petition against the heirs of said G. "W. Sogers, that he owned, prior and up to 1844, a .tract of land of one *528 hundred and twenty acres, in Bath County, near to the home tract of his father and mother; that said George W. Rogers had become insolvent and had taken the benefit of the bankrupt law, had a family, and the other children of his mother were in good circumstances, and she was desirous that her said son and his family should have a home, and in order to accomplish that object determined to have his interest in the three hundred acres exchanged with appellant for his one hundred and twenty acre tract aforesaid; and to effectuate it she and her husband, on the 9th day of January, 1844, conveyed to him one hundred and twenty acres of the home tract, or of the said three hundred acre tract, in consideration, as the deed recites, of two thousand four hundred dollars, in exchange for a certain tract of land of one hundred and twenty acres on the same day conveyed by him to the heirs of the said George W. Rogers; that he and his family were then living on said tract, continued to claim it, and that G. W. Rogers having died before the institution of this suit, his children had instituted proceedings in the Bath Circuit Court to sell said land, and to divide the proceeds; that they had owned and enjoyed said land from the date of the deed aforesaid, and their title thereto was undisputed.
The deed from appellant to apjoellees, the children of G. W. Rogers, bears the same date with the deed from Foster and wife to him, and recites the consideration to be two thousand four hundred dollars in a tract of one hundred and twenty acres that day conveyed to him by D. T. Foster and wife; so that there can be no doubt that the one conveyance was made in consideration of the other.
Moreover, the insolvency of G. "W. Rogers at the time, and his having taken .the benefit of the bankrupt act of Congress, is not denied in the answer to the cross-petition; *529 and that fact perhaps furnishes the explanation why GL W. Rogers did not join in the deed, as the recording of such an instrument might have awakened the energies of the assignee in bankruptcy, or of creditors whose forbearance would he secured only by their ignorance of the existence of this right of their debtor.
Dr. J. Barnes, one of the subscribing witnesses to the deeds aforesaid, both of which are copied in the record, testifies that he was present when they were executed: that Greorge ~W. Rogers was also present, understood the arrangement, approved it, and desired it to be consummated; that the sole consideration of the conveyance of the two fifths of the home tract by D. T. Foster and wife to appellant was the conveyance of the one hundred and twenty acre tract to Gr. "W. Rogers’s children. This family arrangement, made for the benefit of said Rogers and family by his approval more than eighteen years before this suit was brought, acquiesced in during his life, and after his death ratified by his children by a sale of the land and an appropriation of the price to their own exclusive use, should not be disturbed or defeated without complete restoration, which can not now be done in this ease.
The principle of equitable estoppels applies where, upon the occasion of a transaction, money is, with the privity and in the presence of any person, paid upon the faith of a representation which that person understands, and knows is about thus to be acted upon, and that his not disputing will be regarded £s confirmation of it, and he remains silent. He is bound to fulfill the purpose for which it was made. This was the case of one tenant in common contracting for the sale of the entire estate; other tenants, being present when a portion of the money was paid to the mortgagee and making no objection, were held *530 by tbe agreement. (2 Story’s Equity Jurisprudence, see. 1542, Redfield’s edition.)
And in section 1546 (ibid.) the author, with approbation, quotes the following from an opinion of the lord chancellor: “It is a universal law that if a man, either by words or by conduct, has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not have been lawfully done without his consent, and he thereby induces others to do that from which they might otherwise have abstained, he can not question the legality of the act he had so sanctioned to the prejudice of those who have so given faith to his words, or to the fair inference tó be drawn from his conduct.” And again: “ If a party has an interest to prevent an act being done, and acquiesces in it so as to induce a reasonable belief that he consents to it, and the position of others is altered by their giving credit to his sincerity, he has no more right to challenge the act to their prejudice than he would have had it been done by his previous license.” (See Brothers v. Porter, &c. 6 B. Mon. 106, 113-14.)
The history of the transaction leaves not a doubt but that the conveyance of Poster and wife of the 9th January, 1844, was intended by G. W. Rogers and the grantors to pass his interest in the land to appellant, and his heirs are now precluded from setting up claim thereto, but that appellant is entitled to that interest, being the one fifth of the original tract, and to two ninths of one fifth which passed to G. W. Rogers on the death of his brother J. G. Rogers, and to the two ninths of the one fifth which his mother inherited on the death of said J. G. Rogers.
Nor do we concur with the court below that for the slave Alfred, who was sold in 1856, appellant should not be responsible. In. his original answer he admits he was *531 responsible for Ms value at tbe death of his father in July, 1861. We think the admission is sufficient to take the ease out of the statute, and he should be held responsible for the price for which he sold Alfred. He was adjudged to pay for the other slave sold by him, and W. W. Foster should be charged with the hire of the slaves held by D. T. Foster and wife for life, from the death of D. T. Foster in July, 1861 — a reasonable hire while he retained them, to be ascertained by the master.
In all other respects, except as herein specified, the judgment is approved; but for the errors pointed out the judgment is reversed on the original appeal, and on the cross-appeal so far as the price for which the slave Alfred was sold was refused, and the cause is remanded for further proceedings consistent herewith.
The judgment dismissing the petition as to the Stevenses is not appealed from.
Since the death of Charles Rogers nearly if not quite fifty years have elapsed. It must be assumed that there are no outstanding debts against his estate, and his heirs were entitled to the slaves and the value of those sold by appellant, subject to the agreements made with appellant and his father and mother in relation to them.