CASE 117—ACTION BY T. J. SMITH AND OTHERS AGAINST ELISE SMITH AND OTHERS, FOR A CONSTRUCTION OF THE WILL OF T. J. SMITH, DECEASED.—FEB. 23.

## Smith, &c. v. Smith, &c.

APPEAL FROM MADISON CIRCUIT COURT—J. M. BENTON, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANTS.   PLAINTIFFS APPEAL.   AFFIRMED.

WILLS—CONSTRUCTION—ESTATE DEVISED—LIFE ESTATE AND REMAINDER—"CHILDREN."

1. Under a will giving personal and real property to testator's wife, to go at her death to "my son and his children," the son takes but a life estate, with remainder to his children; the word "children" being used as a word of purchase, and not of limitation.

ON REHEARING.

2. Where the construction given certain devises by the trial court was favorable to appellants, and no appeal was taken from that part of the judgment by either party, the construction so given will not be reviewed on appeal from other parts of the judgment.

C. H. BRECK AND W. S. MOBERLY, ATTORNEYS FOR APPELLANTS AND JESSE COBB.

1. We respectfully suggest that a practical business man, as testator is shown to have been, would never for a moment have

Smith, &c., v. Smith, &c.

meant that bank stock should be tied up to use only during two lives and then belong to grandchildren, unborn, and who may not be born for thirty-five or forty years after his death, and who could not come into possession of it until they had reached lawful age, thereby postponing the lawful ownership fifty-five or sixty years, especially when no provision is made for a trustee to hold or sell the same or to reinvest it when the interest of the beneficiary required a sale.

2. It is evident that the testator only intended the devise as a convenient income for his wife and then to belong to his son absolutely.

R. E. ROBERTS, FOR INFANT APPELLEES.

1. It is contended for infant appellee that the word "children," used in the will are words of purchase, and the bank stock and Collins place go to them under the will, after the death of testator's wife and the death of his son, the father of appellees, the devise being, "to my wife and at her death this property goes to my son and his children."

2. The word "children" in devise is used as a word of purchase, and not of limitation, unless there is some qualifying word or phrase in juxtaposition thereto to show that it is a word of limitation, or unless in some other part of the writing which explain that the testator used the word in the latter sense.

## AUTHORITIES.

Mefford v. Daugherty, 11 R., 157; Carr v. Estell, 16 B. Mon., 245; Adams v. Adams, 20 R., 655; Poland v. Chism, 23 R., 1072; Dunlap v. Shreve's Exr., 2 Duv., 334; Moran v. Dilehay, 8 Bush, 434; Lackland v. Downing, 11 B. Mon., 32; Williams v. Duncan, 92 Ky., 125; Bradley v. Skillman, 3 R., 734; Hood v. Dawson, 17 R., 880.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

This action was instituted by the appellants, T. J. Smith, Fanny Smith, his mother, and Elise Bennett Smith, his wife, against the appellees, Jesse Cobb, Elise Smith, and T. J. Smith, Jr., the two last being the infant children of T. J. Smith and Elise Bennett Smith, and represented by a guardian *ad litem,* upon whom summons was served for

them.   The object of the action is to obtain a construction
of certain clauses of the will of T. J. Smith, Sr., deceased,
who was the father of the appellant T. J. Smith, and the
husband of the appellant Fanny Smith.   The will in ques-
tion was duly admitted to probate by the Madison county
court soon after the testator's death, which occurred in
Madison county, where he was at the time domiciled.   The
will is as follows:

"I, Thomas J. Smith, of Richmond, Madison county, Ky.,
being of sound mind and disposing memory, do make and de-
clare this to be my last will and testament.

"1st. I wish all my debts and funeral expenses promptly
paid.

"2d. I give to my wife, Fanny Smith, during her life, the
home place where I now reside on Lancaster avenue, and all
the household and kitchen furniture with all its belongings,
except what belongs to my son; also my father's and moth-
er's portraits, which I give to my son.   I give to my niece,
Rosa May Mobberly, my large silver ladle, an heirloom giv-
en me by my mother, and at the death of my wife this pro-
perty to go to my son or his heirs.   I also give to my wife
the store house situated on Main street in Richmond, Ky.,
during her life and at her death to go to my son and his
heirs.   I also give to my wife 100 shares of bank stock in
the Farmers' National Bank, of Richmond, Ky., at her
death this property goes to my son and his children.   I also
give to my wife during her life 140 acres of land upon the
Irvine pike and known as the Collins' place, at her death
to my son and his children.   I give in trust to Curtis F., W.
S. and Thomas J. Mobberly for the benefit of my sister, Bet-
tie, for her sole and separate use and benefit, free from the
debts of her husband, 110 or 112 acres of land situated in

Fayette county, Ky.; at her death this property goes direct-
ly to her children or their heirs.

"I give in trust for the benefit of my son and his children
to S. S. Parks, W. W. Watts and Thomas J. Mobberly my
farm on the Barnes Mill Pike, known as the old Major Tur-
ner farm, containing about 340 acres of land. I also give to
the same parties in trust for the benefit of my son and his
children 54 acres of land recently bought by me from J. Stone
Walker on the Barnes Mill Pike. I also give to the same
parties in trust for my son and his children 90 acres of land
on the Lancaster Pike, known as the Best land.

"I also give to my son absolutely 8 acres of land in Kan-
sas City, Mo., in East Bottom in the old city limits in Kan-
sas, City, Mo. I give to his wife, Elise Bennett Smith, my
corner lot on the summit recently purchased by me from
W. B. Smith.

"I give in trust to Thomas J. Smith for the benefit of
Thomas Jones, my body servant, the house and lot where he
now lives fronting on Catholic Church street 50 feet and run-
ning back to Stofer's line. I charge Thomas J. Smith's es-
tate with 100 bushels of coal to be delivered each and every
Christmas to the said Jones during his life. I also charge
Thomas J. Smith's estate with all county, town and State
taxes each year during said Jones' life. At the death of
said Thomas Jones this house and lot is to go directly to
the children that he now has and may have by his present
wife, Mary.

"I give to Tabitha White $50.00 in cash to be paid in six
months after my death.

"All the residue of my estate of every kind and character
real, personal or mixed, all choses in action, to my son,
Thomas J. Smith, and I appoint him my sole executor with-

out bond to act for me and in my stead and sign all neces-
sary papers and deeds the same as if I were living. .

"I do not desire or want an inventory taken of my estate.

"I direct a monument (shaft) in the center of my father's
lot in the Richmond cemetery to cost $800.00, with the
name of my father and mother only inscribed thereon.

"In winding up my estate I desire no public sale to be
made of anything belonging thereto.

"Having the utmost confidence in my son's honesty and in-
tegrity, he knowing that my prosperity commenced with my
father and mother, if he should die without legal heirs of
his body, I desire him to give to my sisters' children all the
property that he may be seized with at his death, but first
to provide amply for his wife in whom I am well pleased.
I direct my executor at my death to pay my wife $500,00
in cash.

"This January 28th, 1899.

"Test                                    THOMAS J. SMITH.

  "W. W. Watta,

  "J. Stone Walker,

  "H. C. Jasper."

It appears from the agreed facts found in the record that
the 140 acres of land on the Irvine pike, called the Collins
Place, has, since the death of the testator, been sold
and conveyed by his son, T. J. Smith, and his widow, Fanny
Smith, to the appellee Jesse Cobb, and since sold by Cobb
to one Theodore Wilson, who declined to accept the deed
thereto tendered him by Cobb on the ground that the son
and widow of T. J. Smith, Sr., were by the will devised only
a life estate each, successively, in the land, with remainder
in fee to the son's children—consequently, that the deed
from them to Cobb only conveyed to him the life estate of
each in the land, and the deed tendered by Cobb to Wilson

could convey only such title as Cobb had received from his grantors. It is insisted for appellants that the will gives the Collins place to the testator's widow for life, with remainder in fee to their son, and that the bank stock also given the widow for life by the will at her death goes to the son absolutely. And this court is asked to say what interest, if any, the children of appellant T. J. Smith take in the Collins place and bank stock under their grandfather's will. The chancellor, from whose judgment this appeal was taken, decided that the Collins place and the 100 shares of bank stock are given by the will to the widow of the testator for her life, and at her death to his son, the appellant T. J. Smith, for his life, and at the latter's death to his children.

The provisions of the will which we are asked to construe are as follows: (1) "I also give my wife 100 shares of bank stock in the Farmers' National Bank, of Richmond, Ky., at her death this property goes to my son and his children." (2) "I also give to my wife during her life 140 acres of land on the Irvine pike and known as the Collins' place, at her death to my son and his children." The word "children," as here used, must, we think, be considered as a word of purchase, and not of limitation, and must always be so regarded when so used in a devise, unless there is some qualifying word or phrase in juxtaposition thereto to show that it is intended as a word of limitation, or unless in some other part of the will there are words or phrases which explain that the testator used the word "children" in the latter sense. In Carr v. Estill, 16 B. Mon., 309, 63 Am. Dec., 548, a will devised to "Mary Baker Didlake and her children" a farm. At the time of making the will, Mary Baker Didlake had no children, but one was thereafter born to her. It was held by the court that she took under the devise an estate for life, and the child the remainder. In Mefford v. Dougherty, 11

S. W., 716, 11 Ky. Law Rep., 157, it was held that a devise
to a son and to his children, heirs of his body, gave the son a
life estate, with the remainder to his children.   The court
said the qualifying words, "heirs of his body," did not make
the word "children" a word of limitation.   In Frank v. Unz,
91 Ky., 621, 13 R., 226, 16 S. W., 712, it is said: "It may be
regarded as settled law, in cases where the devise is by the
husband directly to his wife and children, that the wife
takes a life estate only, unless there is something else in the
will showing a contrary intention."   Weaver v. Weaver's
Ex'rs, 92 Ky., 491, 13 R., 699, 18 S. W., 228, 36 Am. St. Rep.,
604; Koenig, etc., v. Kraft, etc., 87 Ky., 95, 9 R. 945., 7 S.
W., 622, 12 Am. St. Rep., 463; Poland v. Chism, 64 S. W.,
833, 23 Ky. Law Rep., 1072.   In Adams v. Adams, 47 S. W.,
335, 20 Ky. Law Rep., 655, the language of the devise was:
"It is my will and desire that all the income of my estate,
real, personal and mixed, I give and bequeath to my daugh-
ter, Martha Jane Adams, and her children in their exclusive
right."   The contention of the appellant was that the wife
took jointly with her children in fee, one-third each, but the
court (Judge Hazelrigg writing) said: "We think the in-
tention of the testator was to give the whole estate to his
daughter for life, and at her death to her children.   This
seems to be the trend of the modern decisions on the use of
the words here involved."   An examination of the authori-
ties relied on by counsel for appellant will show that they
do not conflict with those from which we have quoted.   They
are cases in which, from the use of qualifying words, or
from other parts of the will, it was made to appear that the
word "children" was used exclusively in the sense of "heirs,"
and consequently as a word of limitation.

By the will in this case, except the $500 in money directed
to be immediately paid her by the executor, all that the tes-

tator devised to his wife was for life only. He, however, made a distinct difference in the devises to his son; that is, certain real estate was devised to him absolutely. Other similar property was by the will put in the hands of trustees for his and his children's benefit, but as to the property in which the testator's wife was given a life estate by the will, and the son the remainder, in the matter of the residence property on Lancaster avenue and the store house in Richmond, the devise was to the wife for life, with remainder to the son and his "heirs." In respect to the bank stock and 140 acres of land known as the "Collins Place," the devise was to the wife for life, with remainder to the son and his "children." It would. perhaps, do no violence to the intention of the testator to hold that the word "heirs," in the other clauses of the will, was used in the sense of children. If so, it would limit the son's interest in the store house and residence property to a life estate, as in the case of the Collins' place and bank stock, though the chancellor seems to have thought otherwise, as he held that T. J. Smith, the testator's son, was given by the will the remainder in fee in the store house and home place. In other words, it was held that as to that property the children of T. J. Smith took no interest whatever under the will. It may be that the word "heirs" was used by the testator in that connection advisedly, and for the purpose of excluding his son's children from any interest in that property; but, if so, it but strengthens the conclusion that the word "children" was also used advisedly, and for the express purpose of investing them with just such interest in the Collins place and bank stock as was adjudged them by the chancellor in his construction of the will.

It follows from what has been said that the deed from T. J. and Fanny Smith to Jesse Cobb conveyed only the life

estate of each of the grantors in the Collins place, and, fur-
ther, that the children of T. J. Smith have, under their
grandfather's will, the same interest in remainder in the
bank stock that they have in the Collins place.

The fact that the bank in which the stock is held will
soon go into liquidation, or have to be reorganized because
of its charter, can not affect the rights of the remaindermen
or other parties in interest. The same limitations and con-
ditions may be placed upon a devise of personal estate as
upon a devise of real estate. Miller's Ex'r v. Simpson, 2
S. W., 171, 8 Ky. Law Rep., 518. And if the bank in which
the stock is held should go into liquidation, the chancellor
may, upon the petition of the parties in interest, direct the
reinvestment of its proceeds in other bank stock, good se-
curities, or other property, to be held for the benefit of the
devisees as provided by the will.

As we are not asked, in the briefs of counsel, to construe
those parts of the will which relate to the devises in regard
to the storehouse in Richmond and the residence property
on Lancaster avenue, we do not pass upon the same.

Judgment affirmed.

Response to petition for a rehearing by Judge Settle.

The court is asked to extend the opinion herein by giving
its construction of those parts of the will of T. J. Smith con-
taining the devises as to the "Dwelling House" on Lancaster
avenue, and the "Store House" situated on Main street, in
Richmond. As the construction given the devises in ques-
tion by the judgment of the lower court was as contended
for by appellants, and therefore favorable to them, and no
appeal was taken by them from that part of the judgment.
and no cross-appeal was prayed or taken by appellee there-
from, it is the opinion of the court that the devises referred

to are not properly before it for construction, and that the extension of opinion asked should not therefore be granted. Wherefore the petition is overruled.