Case 2.—ACTION BY W. H. HALL, &c., AGAINST JOHN W. WRIGHT FOR CONSTRUCTION OF DEED.—June 17.

## Hall, &c. v. Wright.

Appeal from Letcher Circuit Court.

M. J. Moss, Circuit Judge.

Judgment for defendant. Plaintiff Appeals. Reversed.

1. Deeds—Construction—Inconsistent Parts—In construing a deed, the intention of the parties as it appears from the whole instrument must control and prevail over inconsistent technical rules of construction.

2. Intention of Grantor—Where the granting clause and the habendum of a deed are irreconcilable, and it is not apparent from the other parts of the deed which the grantee intended should control, the granting clause will prevail.

3. Estate Created—Ky. Stats., 1903, sec. 2342, providing that, unless a different purpose appear, every estate in land created by deed without words of inheritance shall be deemed such estate as the grantor had power to dispose of, merely abrogates the common-law rule limiting to a life estate a grant without words of inheritance, and has no application to a deed which contains words indicating how the title is to pass.

4. Mention of children—While only the parties to a deed of indenture can take a present interest, yet persons not parties, such as after-born children, may take an interest in futuro.

5. Same—The caption of a deed recited that it was made between the grantors and the grantee "and his children." The granting clause recited a conveyance to the grantee without any words of inheritance or mention of the children. The habendum recited that the grantors would warrant and defend the title unto the grantee "and his children forever." Held—That the deed gave a life estate to the grantee named, with remainder to his children, born and to be born.

HAZELRIGG & HAZELRIGG for appellants.

1. The contention of appellants is that the word "children"

Hall, &c. v. Wright.

is a word of purchase and not a word of inheritance as contended for by appellee.

2. Intention must of course be deduced from the entire deed in order to determine the estate created, and this intention once expressed must govern any subsequent mention where the intention is the question in issue, it being concerning the same subject-matter.

3. The warranty in the deed is made to "Joseph Hall and his children forever," showing the use of the word "children" in its proper sense.

4. We submit that nothing is shown in the context of this 'deed which would prevent the words "his children" taking their usual and technical meaning.

### CITATIONS.

Ridgeway v. Lamphear, 99 Ind., 255; Page on Wills, p. 653; Williams v. Knight, 18 R. I., 336; Annable v. Patch, 3 Pick., 360; 3 Am. & Eng. Ency. Law, 231, note 1; 232, note 1 (2d Edition); Turner v. Patterson; 5 Dana, 295; Melchremer v. Gross, 58 Pa., 412; Wolford v. Merganthal, 91 Pa. St., 30; Davis v. Hardin, 80 Ky., 672; Smith v. Smith, 27 Ky. Law Rep., 365.

HAGER & STEWART and S. B. DISHMAN for appellee.

### AUTHORITIES CITED.

The word "children," in the deed under consideration, is synonymous with the word "heirs." (Lachland's Heirs v. Downing's Ex'rs, 11 B. M., 34; Dunlap v. Shreve's Ex'rs, 2 Duv., 334; Moran v. Dillehay, 8 Bush, 434; Hood v. Dawson, 98 Ky., 285; Williams v. Duncan, 92 Ky., 125; Sloan, &c. v. Thornton, &c., 102 Ky., 443; Harrington v. Gibson, 109 Ky., 752; McFarland v. Hatchett, 26 Ky. Law Rep., 276.

OPINION BY JUDGE NUNN—Reversing.

This appeal involves the construction of the following deed:

"This March 21 day 1885: This indenture made and entered into between Eli Hall and Polly Hall of the first part and Joseph Hall and his children of the second part, both parties of the county of Letcher and State of Kentucky.

"Know all men by these presents that I, Eli Hall,
vol. 121—2

and Polly Hall of the first part hath this day bargained and sold unto Joseph Hall of the second part a certain tract of land containing six hundred acres, be the same more or less, in and for the sum of three hundred dollars to me in hand paid, the receipt whereof is hereby acknowledged. (Here follows a description of the land.)

"We, the party of the first party, doth bargain, sell and convey the above named tract of land and will warrant and defend the title of the same from us and our heirs and assigns and from all other unto the said Joseph Hall and his children forever," etc.

It is agreed that Joseph Hall was the son of the grantors, Eli and Polly Hall, and also that Joseph Hall had at that time several children living, and afterwards others were born to him. The appellee contends that, as the children of Joseph Hall were not referred to in the granting or conveying clause, they took no interest in the land, and that Joseph Hall took the fee-simple title, and that the word "children" in the habendum clause being followed by the word "forever," should be construed as "heirs." The appellants contend, as the children were named as grantees with their father in the caption of the deed, and as they were again named in the habendum as parties in interest with their father, that they took the land in remainder after the life estate of their father.

In construing a deed the intention of the parties as it appears from the whole deed must control. If the intention appears, technical rules of construction can not be applied if they lead to a different result. If the granting clause and the habendum are irreconcilable and the other parts of the deed do not make it apparent which the grantor intended should control, it must be said that the granting clause will pre-

vail. But in the deed under consideration there is not any conflict between the granting clause and the habendum. The granting clause contains no words of inheritance. It is not indicated in that clause what is to become of the estate at his death, nor is it intimated that he has any power to dispose of it. It is not granted to him and his heirs and assigns, but to Joseph Hall alone. And when it is stated in the habendum that it is to go to the children, there is no conflict with the granting clause, but only supplies a defect in that clause.

Under sec. 2342 of the Ky. Stats. of 1903, which was the law at the time this deed was executed, it is provided: "Unless a different purpose appear by express words or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee simple or such other estate as the grantor or testator had power to dispose of."

Under the common law, when a grant was made to a person without words of inheritance, the estate would not pass to the heirs, and the grantee would not take the fee simple title; hence the necessity for this statute to pass the fee-simple title to purchasers when no words of inheritance were contained in the conveyance. But this statute does not apply where there are any words in the conveyance indicating how the title is to pass.

In the case of Baskett v. Sellars, &c., 93 Ky., 3, 19 S. W., 9, the court construed a deed containing clauses similar to the one at bar. The granting clause was as follows: "For and in consideration of natural love and affection the said party of the first part (the father) has for his daughter the said A. H. B. Farley and his son T. L. Farley, parties of the second part, the party of the first part has

this day sold, and by these presents doth grant, bar-
gain, sell and convey to the parties of the second
part the following described land," etc.   The haben-
dum was, "To have and to hold to them, my said
daughter and son, and their children forever."

The court in that case decided that there was no
conflict between the two clauses, and that the prop-
erty went to the children of the grantees as directed
in the habendum clause.   In that case it was con-
tended, as in this, that the grantor used the word
"children" in the sense of "heirs," and conse-
quently the grantees took a fee-simple estate.   The
court in that case said: "But there is nothing in
the deed indicating that the grantor used the word
'children' in the sense of 'heirs.'   The word was
evidently used in its popular sense, and as indicat-
ing the desire of the grantor to provide for his two
children and their children, his grand-children, should
they have any children.   Hence he used an appro-
priate word to express that intention.   The word
'children' has its meaning, as well as the word 'heirs,'
which is a word of purchase, which should control
the granting clause where it appears to be so in-
tended, even though used in the habendum.   Here
the children are not mentioned in the granting clause,
but only in the habendum; and the rule is well set-
tled in such cases that the grantee takes a life estate
only, and the children take a remainder interest."
(See, also, Bodine's Adm'r v. Arthur, 91 Ky., 53,
12 Ky. Law Rep., 650, 14 S. W., 904, 34 Am. St. Rep.,
162, and McFarland, &c. v. Hatchett, 118 Ky., 423, 80
S. W., 1185, 26 Ky. Law Rep., 276.)   In the case at
bar the children were not only named in the haben-
dum clause, but those in esse at the date of the deed
were named in the caption, and they were made par-
ties grantee to the deed.

It is evident from the whole deed that it was the intention that the children of Joseph Hall should take an interest in the land conveyed. The real question in the case is, what interest do they take? The difficult question to determine is whether the children in esse at the date of the deed took a present joint interest with their father, or whether all of his children took in remainder. If those in esse had not been named as parties grantee in the caption, it is clear that they would have taken in remainder, as expressly decided by this court in the cases supra. It is a rule of ordinary application that in a deed *inter partes,* such as the one under consideration, only those who are parties thereto can take a present interest, and hence, as those not in existence can not be parties, the rule, if applied in cases like this one, where the father is providing for his child and its children, would result in excluding afterborn children. Of course no such result was in the mind of the grantor, and the application of the ordinary rule would clearly defeat the grantor's intention. But those not parties to the instrument, that is, the after-born children, can take *in futuro,* and the courts were not slow, in order to effectuate the intent of the grantor, to construe the grant as creating an estate which all intended beneficiaries could take, and therefore construed the deed to give a life estate to the first taker, with remainder to the children born and to be born.

The court, in arriving at this conclusion, has not felt itself bound by the hard and fast technical rules of construction, where to do so it might eventually defeat the intention of the parties to the instrument under construction.

In the case of Turner v. Patterson, 5 Dana, 296, the devise was "to my daughter, Catherine Patterson, I give her and her children the fifty acres," etc. The

court said this language imported that the mother and her children should hold the lands as tenants in common, and as no time was fixed for the enjoyment of the estate by the children, or for a partition, the legal effect of the devise was to restrict the devise to those children living at the testator's death. Catherine had seven children living at the testator's death and five were born afterward. There was a provision in the will to the effect that Catherine was only to have this 50 acres, and the court held this language to imply clearly that Catherine was to have the whole 50 acres, and this she could get only by a construction giving it to her for life, with remainder to her children.

In Webb & Harris v. Holmes, &c., 3 B. Mon., 404, the conveyance was by Christ and wife of the one part and Francis and Sarah Thomas of the other, and the grant was to Sarah Thomas and her children forever, Sarah being the daughter of the grantors. The court said: ''This is a deed *inter partes,* in which Christ and wife are named parties on the one side and Sarah Thomas and her husband on the other. The children are not parties, nor are they named as such in the caption of the deed, which, by the designation of the parties, is intended to confine the deed to those named in exclusion of all others as contracting parties. And as a stranger who is not a party to a deed can derive no legal interest under it, or maintain covenant on it, so it is well established that those who are not parties to a deed can take no present interest under it; but those who are not parties may take by way of remainder. (Co. L., 231a; M. & S., 308; 8 Mod., 116; Comyn's Digest, title 'Fait D,' 2, &c.) So to give to the deed operation at all as to the children, they must be construed to take in remainder only, as they can not take a present in-

terest with the mother. And surely such construc-
tion should be given to the deed as to give some
beneficial interest to the children, as they were
clearly intended to be provided for. By giving to
them an estate in remainder in fee, to take effect
after the life estate of their mother, they may all
be provided for—not only those who were born be-
fore, but those who were born after, the date of the
deed—for in that case there is a freehold to sup-
port the remainder until all the children are born.
And it may be fairly presumed that it was as much
the object of the donor to provide for after-born
children as those that were born before the date of
the deed.''

This case is in point. It is true that none of the
children of Sarah Thomas were made contracting
parties to the deed in that case, but it is likewise
true in the present case that only the children of Jo-
seph Hall in esse were or could be made parties.
And as no reason can possibly be suggested why
the after-born children should have been intention-
ally excluded, and as they can not take a present
interest under the Webb-Holmes case, the court
must effectuate the intention by giving all the chil-
dren of Joseph—those in being at the date of the
deed and those thereafter born—an estate in remain-
der.

The case of Foster v. Shreve, 6 Bush, 519, is
similar to the Webb-Holmes case, supra. The con-
veyance was from a father to his daughter and ''her
present heirs,'' the father and daughter, only, being
the contracting parties in the caption of the deed.
The court held that, while the ''present heirs'' of the
daughter (meaning her present children) were not
capable of taking a present interest, they could take
in remainder, and a life estate was given the daugh-

ter, with remainder to her children as described in the deed.

The case of Bodine's Adm'r v. Arthur, 91 Ky., 55, 12 Ky. Law Rep., 650, 14 S. W., 904, 34 Am. St. Rep., 162, is also in point. The clauses of the deed there in dispute were: "Have this day given, granted, bargained and sold to Hattie E. Bodine, certain lands, * * * to have and to hold unto the said Hattie E. Bodine, wife of said B. W. Bodine, and to her children by him begotten forever." The court held that the last expression of the grantor as to the conveyance, which included a grant to the children of Mrs. Bodine, controlled the former expression, in which they were omitted; and, continuing, said: "It is clear, judging from the whole conveyance and attendant circumstances, that the grantors intended the habendum to operate as an habendum eo proviso to the conveyancing clause and to control the same to the extent of limiting the estate conveyed to a life estate, remainder to her children begotten by B. W. Bodine. For, according to the uniform decisions of this State, such conveyances give to the named vendees a life estate, remainder to the children. This construction grows out of the fact that, as there must be parties vendors and vendees in order to make a valid conveyance, none but parties vendees can take a present estate. Such parties may be designated by their proper names, or by such other designation as will identify the particular persons meant as vendees. In this case the expression 'her children by B. W. Bodine begotten' does not identify the particular individuals who are to take, because they or some of them may hereafter be born. Hence they can not be deemed parties vendees in the sense of taking an immediate estate, but they can take an estate in remainder. (Foster v.

Shreve, 6 Bush, 522.)   Such conveyances, thus construed, are effective; otherwise not," etc.

Clearly, this construction is not dependent upon whether there were or were not some child or children in existence when the deed was made.   While some of them may have been in existence, it was patent that some of them might be born after the date of the deed.   And such is the case generally speaking, as the testator and grantor in such cases can not know what lies in the future.   While it is true that the children in esse might take a present estate under such a grant, yet those possibly to be born thereafter could not; and, as the grant includes both, all must be postponed in the enjoyment of the estate to effectuate the intention of equality by giving a life estate to the first taker, and remainder to the children born and to be born.

In Carr v. Estill, 16 B. Mon., 309, 63 Am. Dec., 548, the devise was "to May Baker Didlake and her children" a tract of land, etc.   At the time of the devise she was unmarried, and had no children.   The court held that:   "The words of the devise abstractly and literally import an immediate gift not only to the devisee in being, but to those not in being.   But, there being no children in esse at the time of the devise, it could not have been the intention to give an immediate estate to them, for that were impossible.   And as the words of the devise, as conceded by all authorities, manifest a clear intent that the children shall take, the only consistent and rational construction is that the testator intended the devisee in being at the time should take a life estate, remainder to the children."

In the Bodine-Arthur case it does not appear whether there were any children in being at the time of the deed or not, but in the Carr case there were

no children when the devise was made or took effect. The same construction, however, must obtain, for the donor is in the same state of ignorance as to future children in the one case as in the other. The unborn children, when there are already children, and when there may be more, and the unborn children when there are as yet none, are presumably alike the subject of the donor's thought. And such is the rule, as we have already seen, in the Turner-Patterson and Webb-Holmes cases and others of the older cases.

In Mefford v. Dougherty, 89 Ky., 58, 11 Ky. Law Rep,. 157, 11 S. W., 716, 25 Am. St. Rep., 521, the devise was: "To my son George and to his children, the heirs of his body, about fifty acres of land. * * * The land I have given my son George is bounded," etc. There was precisely the same language giving the daughter 100 acres, except her share was burdened by the payment of $800. The court held that the children of George and of his sister took as purchasers, and adjudged in express terms the sister entitled to a life estate, with remainder to her children, and, by necessary implication, that the son did the same.

The case of Smith v. Smith, 85 S. W., 169, 27 Ky. Law Rep., 363, was one in which the father devised real estate "to his son and his children." The lower court gave the son the estate for life, with remainder to the son's children. This judgment was affirmed.

In the case of Adams v. Adams, 47 S. W., 335, 20 Ky. Law Rep., 655, there was a devise by a father "to his daughter, Martha Jane Adams, and her children in their exclusive right." It was contended that Martha Jane and her children took a joint interest in fee. The court held otherwise, giving a life

estate to the mother and remainder to her children, not because it was likely that a stranger to the blood of the donor might get some part of the estate to the exclusion of his own blood, which is the reason generally given where the husband is providing for his wife and children, but saying: ''If a joint estate is given, the quantity of interest each takes will remain uncertain, and shift on the birth of each after-born child, for confessedly in such cases the devise opens up for the benefit of all the children, whether in existence at the time the will speaks or not. It is hardly to be supposed the testator intended to create such an estate.'' Thus was again recognized the principle that the language ''to A. and his children'' imports an immediate taking by all of A.'s children, those in existence as well as those to be born thereafter, and, as that was impossible as to after-born children, the most effectual way to carry out the intention of the donor in such cases was to give A.'s son a life estate, with remainder to his children.

In Kuhn v. Kuhn, 68 S. W., 16, 24 Ky. Law Rep., 112, a father devised to a daughter, ''to her and her children, to be theirs.'' This was held to create a life estate in the daughter, with remainder to her children.

In Mitchell v. Simpson, 88 Ky., 125, 10 Ky. Law Rep., 708, 10 S. W., 372, the devise was from a father to his daughter and her bodily heirs, of certain lands, except a certain part of it was to be disposed of by her as she wished. It was held that she took a life estate, with remainder to her children, except where she was given the right to dispose of a certain part. In this connection it may be observed that there are quite a number of cases where the donor is the husband, and makes a provision for his wife and children. In all these cases

the court has with rare unanimity held that the wife takes a life estate, with remainder to the children; and this because otherwise, as indicated above, the estate might eventually come to those who are strangers in blood to the donor. A few of these cases are McFarland v. Hatchett, 118 Ky., 423, 80 S. W., 1185, 26 Ky. Law Rep., 276, and cases cited therein; Jarvis v. Quigley, 10 B. Mon.,104; Smith v. Upton, 12 Ky. Law Rep., 28; Davis v. Hardin, 80 Ky., 673, 1 Ky. Law Rep., 165; Frank v. Unz, 91 Ky., 621, 13 Ky. Law Rep., 226, 16 S. W., 712; Koenig v. Kraft, 87 Ky., 95, 9 Ky. Law Rep., 945, 7 S. W., 622, 12 Am. St. Rep., 463; Righter v. Forrester, 1 Bush, 278.

The case of Powell v. Powell, 5 Bush, 620, 96 Am. Dec., 372, seems to form an exception to the rule, and of this case it is said in Davis v. Hardin, supra, that the court would doubtless have followed the general rule as announced theretofore in Webb v. Holmes, had his attention been called to it. The case is not in accord with the established rule in this State.

In Tucker v. Tucker, 78 Ky., 504, a conveyance was made by a stranger for a valuable consideration paid by John C. Tucker to "Martha Ann Tucker (wife of John C. Tucker), and the heirs of John C. Tucker and their heirs forever." The "heirs of John C. Tucker" were held to mean his children and the mother and children were given a joint estate. It appeared however that John C. Tucker had made a will, and gave the bulk of his estate to an after-born child, for the reason that the mother and children living at the date of the conveyance in question had been given the lands embraced therein in fee, to the exclusion of the after-born child, and the court felt constrained, doubtless, to effectuate the manifest intention of the father.

It is said, however, that there has not been entire unanimity in the decisions of this court where the donor is other than the husband making provision for his wife and children, and this, in a measure, is perhaps true. It would be singular if there was given the same meaning even to the same words in every will or deed. The cardinal rule is to effectuate the intention of the testator or grantor, and this is to be arrived at by looking at the whole will or deed, and the conditions which induced the execution of the instrument, and not alone to some particular expression therein.

The case of Cessna v. Cessna, 4 Bush, 516, decided in 1868, is one of the cases supposed to be in conflict with the rule so overwhelmingly established by the cases cited above. There a father covenanted with his son, for a valuable consideration, to convey to him by name "and his lawful children" a certain tract of land. It was the contention of the son's creditors that he took the fee, because the words "lawful children" were used in the sense of "heirs." It was contended, on the other hand, by the children of the son, that these words were words of purchase, and, further, that they took as joint purchasers. The court upheld the contention of the children as made by them. The opinion is devoted almost entirely to a discussion of the use of the words "lawful children" as words of purchase, and only the following is found on the question of how the grantees held: "As children were born to W. W. Cessna after the date of the writing aforesaid, the estate would open up to such after-born children, and they would take their respective shares." No contention was made by the parties or considered by the court involving the suggestion of giving the first taker a life estate with remainder to the children.

In the case of Bullock v. Caldwell, 81 Ky., 566, 5 Ky. Law Rep.. 576, the devise was to a daughter and her children, and the court followed the Powell case, supra, which, as we have seen, belonged to a different class, being a case where a husband was providing for his wife and children. But the court in the Bullock case was careful to say, "What effect the conveyance would have as to after-born children, is not a question before us." There being no such children, and presumably no possibility of any, the court gave the words their literal and abstract import. It will be noticed in the last-cited case, and in the cases of Davis v. Hardin and Smith v. Upton, supra, which are husband and wife cases, the court referred to the fact that in cases where a husband was making provisions for his wife and children there was less reason to suppose the donor intended the beneficiaries to take as joint tenants in cases where a father was making provision for his child and his child's children, because in the former case there was greater danger that the estate would pass into the hands of a stranger. But we are to keep in mind that, while this is true, the court did not lay down the rule that, even in the latter state of case, the child and the child's children were to take as joint tenants. No such case was before the court either in the Smith-Upton case or in the Webb-Holmes case; nor do we suppose the court in the Bullock-Caldwell case was attempting to lay down such a rule, unless, indeed, it was in such cases as where the donor not only knew that there were no after-born children, but knew also that there could not, by any possibility, be any such children. There would, in that class of cases, be no opening up of the grant or devise to let in such children, and therefore no shifting and uncertain interest created. It is

manifest, however, that the cases where the donor can know in advance that there will be no after-born children can be very rare, and whether such cases may afford grounds for a joint tenancy rule is a question we need not consider here. It is certain that the application of such a rule should only be made, if at all, in cases where it clearly and affirmatively appears that at the time the donor acts he knew there could be no such after-born children. We can not believe, unless a contrary intent clearly appears, that the donor ordinarily, in the use of language granting or devising property to his child and his child's children, intends that his child, having one child, shall first own one-half in fee, and then on the birth of another child own one-third in fee, and then one-fourth, and so on, until in his old age, only he may finally come to know what land he really does own.

We conclude, therefore, in the present case, that Joseph Hall was entitled only to a life estate in the lands in dispute, and his children born and to be born take a remainder in fee.

Some time after the date of the deed referred to, Joseph Hall became indebted to the Aultman & Taylor Machine Co., for machinery in the sum of $1,270, and he executed a mortgage on this land to secure the payment of the debt. After the debt became due, the company brought an action to enforce its mortgage lien. The land was sold, and it became the purchaser. Some years afterward this company instituted an action under sec. 11 of the Stats. of 1903, alleging that the children of Joseph Hall were claiming to be the owners of this land, or the remainder therein, and sought by the petition to quiet the title thereto, and in that action obtained a judgment to that effect. In the month of July, 1904, the appellants, the children of Joseph Hall, their

father being dead, instituted this action against the appellee, Wright, who is the grantee of the Aultman & Taylor Machine Co., alleging, in substance, that the judgment last referred to is void, and was obtained by fraud; that those representing the interests of these appellants in that action colluded with the Aultman-Taylor Machine Co., and for a money consideration sold out their interest, abandoned their defense, and in effect agreed to a judgment which in effect deprived them of their interest in the land. The appellee demurred to this petition, and the court sustained it upon the ground that the deed referred to passed to Joseph Hall, their father, the fee-simple title to the land, and. this appeal is from this judgment. There is no appeal from the former judgment.

For the reasons indicated the judgment appealed from is reversed, and cause remanded for proceedings consistent with this opinion.