# Kentucky Real Estate Board et al. v. Smith

(Decided Feb. 25, 1938.)

314

HUBERT MEREDITH, Attorney General, M. B. HOLIFIELD, Assistant Attorney General, and JAMES A. HALL, Jr., for appellants.

THOMAS F. MANBY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The primary and all-sufficient decisive question for our determination, as submitted by this appeal, is, Whether or not a deed in the chain of title of appellee and plaintiff below, Milton W. Smith, to a tract of land in Oldham county, Ky., containing 70 acres, conveyed to the joint vendees therein a fee-simple title, or a lesser estate? A secondary question of adverse possession is also raised, but which becomes relevant only if the deed referred to conveyed a less estate than the absolute fee-simple title, and, since we interpret it as conveying the absolute fee-simple title with no reserved interest in the grantors (which was the judgment of the trial court) the question of adverse possession becomes irrelevant.

The facts are: The appellant and one of the defendants below, Kentucky Real Estate Board, as the constituted governmental agency of the commonwealth to acquire title to real estate, obtained an option from the plaintiff, Milton W. Smith, to purchase his tract of land containing 70 acres and located in Oldham county, Ky., at an agreed price, provided he could convey a perfect title. Before the expiration of the option the board notified him that it would be accepted. The purchase was a part of a much larger tract needed by the commonwealth for the purpose of erecting buildings for a reformatory for convicted criminals, and the acquistion of sufficient surrounding grounds to furnish employment for the prisoners. In due time plaintiff furnished, as agreed, an abstract of title, and tendered to the board a warranty deed conveying the absolute title to the premises. It declined to accept the tendered deed upon the ground that plaintiff owned, as it contended, only a one-half undivided interest in the tract of land, and that the other half thereof was owned by the heirs or devisees of A. Wellman, deceased. That contention was based on defendant's interpretation of a deed executed by Wellman and wife to J. W. Lee and wife on January 6, 1910. The land was later conveyed by Lee and wife

to a man by the name of Allen, who in turn conveyed it to plaintiff. Both deeds—from the Lees to Allen, and from Allen and wife to plaintiff—admittedly conveyed the absolute title to the involved land.

The controverted language in the Wellman deed is contained in this excerpt therefrom: "That for and in consideration of the sum of $1.00 cash and other valuable consideration, receipt of which, by first party, A. Wellman, is hereby acknowledged, the parties of the first part have sold and do hereby grant, sell and convey unto said parties of the second part, their heirs and assigns, that is unto said second parties jointly, in interest of one-half each, during the life of the said Sue F. Lee, and at her death her interest to go to J. W. Lee and his heirs," etc. Lee and wife are dead, and the same is true as to Wellman; but the latter left surviving him two adult children residing in Knoxville, Tenn., and two infant grandchildren, the issue of a deceased child—all of whom were made parties defendants with the infants represented by guardians ad litem, and the nonresidents by a warning-order attorney—both of whom filed reports as required by law.

The action was brought by plaintiff against defendant, Real Estate Board, and other state functionaries possessing connected duties, and also against the Wellman heirs, under our declaratory judgment statute to obtain an interpretation of the inserted language from the Wellman deed; but though so designated the action in reality is one for specific performance—all parties to the option contract apparently being disposed to carry out that agreement if plaintiff's tendered warranty deed conveys to the grantee therein the absolute title. The court held that it did do so, and from that judgment defendants prosecute this appeal.

It is the contention of defendants' learned counsel briefing the case for this court that the above inserted granting clause from the Wellman deed only conveyed a present joint life interest in the land to the vendees therein, Lee and wife, during the latter's life and to the husband in remainder, after the death of his wife, Sue F. Lee, the fee to the one-half life interest that was conveyed to her, and that no conveyance whatever was made of the remainder in the half joint interest that was conveyed to the husband, J. W. Lee, for his wife's

life. Therefore, as counsel contends, the unconveyed remainder interest of J. W. Lee's half joint life interest per auter vie—never having been conveyed, according to his interpretation—was left vested in the grantor in the Wellman deed, and that, since both Sue F. Lee and Wellman have died, the latter's heirs are the present owners of a joint half undivided interest in the land.

On the other hand, counsel for plaintiff contends that Wellman in his deed to the Lees intended to and did convey to them—in the awkward manner therein expressed—the entire fee-simple title of Wellman, but to be held by the Lees jointly throughout the life of Mrs. Lee, and after her death then her husband to become the sole owner, and that with the title so held they conveyed an unfettered fee-simple estate to Allen, and he in turn conveyed the same absolute title to plaintiff. In the argument advanced by both sides much earnestness as well as research is exhibited, and our attention is thereby called to a number of sections of our statute bearing upon the effect given specified phrased conveyances, as well as to a number of domestic cases discussing the relative effect to be given granting and habendum clauses in deeds—involving preferences to be given the one over the other, etc. But those statutes become relevant only when the phraseology to be interpreted is unambiguous and in conformity with the legislatively enacted rules contained in them; whilst the class of cited opinions referred to become relevant only when all other rules for the interpretation of such instruments prove abortive in revealing the intention of the parties. Such rule (preference of granting clause over the habendum clause) is the last one to be invoked in the interpretation of deeds, and if other rules therefor to which courts give precedence are themselves sufficient to solve the problem, the rule growing out of the difference between the granting and habendum clauses will be ignored. One of the primary as well as prevailing rules for the interpretation of the character of writing here involved (and also others) is to ascertain from the entire language of the instrument the intention and purpose of the parties in executing it, and if that intention is not in plain conflict with unambiguous inhibiting language found therein, then it should prevail. That rule is so fundamental as not to require the citation even of a single authority in its support, but one com-

paratively recent case from this court in which it was approved and applied is Baker v. Baker, 191 Ky. 325, 230 S. W. 293, 294.

Our approval in that opinion of the rule as so stated is thus expressed: "It is an elementary, as well as fundamental, rule in the construction of deeds, wills, and other writings that the intention of the parties in executing them shall be given effect by the courts, provided that intention does not contravene any positive rule of law or of public policy. It is equally elementary, as well as fundamental, that in arriving at the intention of the parties who executed the writing under consideration all parts of it must be considered, and the intention to be gathered from the language of the whole instrument is the one which will be enforced. Some of the many cases from this court so holding are: Hall v. Wright, 121 Ky. 16, 87 S. W. 1129, 27 Ky. Law Rep. 1185; Ratliffe v. Ratliffe, 182 Ky. 230, 206 S. W. 478; Bain v. Tye, 160 Ky. 408, 169 S. W. 843; Spicer v. Spicer, 177 Ky. 400, 197 S. W. 959; Siler v. White Star Coal Co., 190 Ky. 7, 226 S. W. 102; and Wilson v. Woodward, 190 Ky. 326, 227 S. W. 446, and other cases cited therein."

In the Ratliffe Case therein referred to, we said, in dealing with the same question, this: "It is a rule firmly fixed in this jurisdiction that deeds, wills, and other instruments must be construed in accordance with the intention of the party who executed them, and such intention must be gathered, not from any particular part or clause in the instrument, but by considering it in its entirety." Following that excerpt from the Ratliffe opinion, we continued with the Baker opinion by saying: "The same cases further say that it is the especial duty of the courts to consult all parts of the deed, or writing under consideration, when it appears to be inartificially drawn, and that in such case the old technical rules of the common law, giving preference to certain clauses, parts, or divisions of the writing, will not be applied when from a consideration of the whole writing a different conclusion would be reached than the one if those rules were strictly adhered to."

Following that well-settled rule—and which is to be given preference over all others—we have no hesitancy in concluding that it was the intention of Wellman in

the conveyance he made to the Lees to convey all of his title in the premises to his named grantees, reserving in himself none; but (no doubt at their instance) he attempted to express their desire that the wife's interest as grantee under the deed should be limited to her life during which time the parties would hold the title jointly, and that after her death her husband should become the sole owner of the remainder of that undivided one-half, which, with his absolute ownership of the other undivided half, would create him as the absolute owner. That the Wellman deed, in expressing limitations upon the wife's estate in the conveyed land, was inartificially drawn goes without saying, and it may be further admitted that as drawn it might be technically construed in the manner contended for by counsel for appellants. Nevertheless, as is seen from the excerpts, supra, taken from the Baker opinion, such technical interpretations of inartificially constructed language should not supersede and prevail over what the entire instrument portrays as being the undoubted intention of the parties to the instrument; for it will be observed that in the Baker opinion we expressed the more modern rule in this language: "And that in such case [inartificially drawn documents] the old technical rules of the common law, giving preference to certain clauses, parts, or divisions of the writing will not be applied when from a consideration of the whole writing a different conclusion would be reached than the one if those rules were strictly adhered to."

Furthermore, it is an equally well-established rule that confused and ambiguous language will be construed against the grantor and in favor of the grantee, upon the ground that it was selected and incorporated in the instrument by the grantor himself and embodies vernacular of his own choosing. Therefore, if in doing so he creates a doubt as to the extent of the interest, or the character of estate he conveyed by a deed executed by him, that doubt will be resolved against him, and the instrument will be interpreted as conveying the largest interest of which he was capable of transferring. See Board of Councilmen of City of Frankfort v. Capital Hotel Co., 188 Ky. 754, 224 S. W. 197.

Likewise, it is permissible to construe conveyances of real estate as transferring the absolute title rather than a lesser one, and if the language employed is sus-

ceptible of two constructions, one of which conveys absolute title and the other a lesser estate, the conveyance will be construed as conveying the absolute fee in preference to a lesser title. It is thus expressed in the case of Wilson v. Woodward, 190 Ky. 326, 227 S. W. 446, 448: "If, however, the language was more doubtful than it is, and so much so as to admit of two constructions, one conveying the absolute fee to the named grantee and the other conveying to her a less estate, it would then be our duty, under numerous opinions of this court, to construe the deed so as to convey an absolute fee. Lawson v. Todd [129 Ky. 132, 110 S. W. 412, 33 Ky. Law Rep. 557]; supra; Edwards v. Cave, 150 Ky. 272 [150 S. W. 369]; Baxter v. Bryan, 123 Ky. 235, 94 S. W. 633, 29 Ky. Law Rep. 658; Moore v. Sleet, 113 Ky. 600, 68 S. W. 642, 24 Ky. Law Rep. 426; Tanner v. Ellis (Ky.) 127 S. W. 995, and Kirby v. Hulette [174 Ky. 257, 192 S. W. 63]; supra." So much for the guiding rules that we should follow in the interpretation of the involved deed in this case.

We will now turn our attention briefly to its language—and to a consideration of the unusual and anomalous conditions brought about if appellants' contention be the correct one—in order to discover the intention of the parties as confined solely to the language employed. It will first be observed that the interest conveyed to both J. W. Lee and his wife, Sue F. Lee, by the Wellman deed—whatever may be the wording of its measurement—is to "their heirs and assigns." There would be no heirs of Mrs. Lee to take her carved out life interest in one-half of the land, since the deed by express terms conveys that remainder interest to her husband. But whatever interest either of the vendees took under the deed was to be held by them and by "their heirs and assigns" with the right of joint occupancy and interest as long as the wife lived, and at her death the remainder of her one-half interest should vest in her husband, J. W. Lee. Clearly, the inartificial draftsman, by using the expression "during the life of the said Sue F. Lee," intended thereby to measure the duration of the jointly owned interest, and not to curtail, or diminish, or destroy the perfectly patent intention of the entire language of the deed to convey to J. W. Lee an absolute fee in his one-half of the land conveyed and an absolute fee in remainder in his wife's

half after her death. That interpretation, to our minds, is as much warranted from the verbatim language employed as is the technical interpretation put upon it by learned counsel for appellants. Under one of the prevailing rules, supra (though the intention of the parties be less plain), it would be our duty to adopt the interpretation whereby the absolute fee was conveyed rather than the one that would transfer a lesser estate.

We have hereinbefore made reference to the unusual and anomalous conditions that defendants' interpretation would produce and to which a brief reference will now be made. Counsel admits that J. W. Lee, under the Wellman deed, took a life interest per auter vie terminating on the death of his wife, when his particular estate ceased and his interest in the land became transferred—not to the one-half that he had theretofore owned or possessed—but to his wife's one-half interest which she had enjoyed during her life. The unnatural feature thereby wrought—if it be the true interpretation of the deed in controversy—lies in the fact that the husband's remainder interest was transferred to that formerly held by the wife instead of his continuing to retain the one-half interest in the life estate that he had theretofore held. Such an interpretation resolved itself into this: That the husband, J. W. Lee, was given a life estate in one-half the land during the life of his wife. If he predeceased her, then his heirs or devisees would be entitled to that life interest from the time of his death to the death of his wife. Then after her death the same heirs or devisees would become entitled to take possession of the remainder interest of the wife's one-half interest conveyed to her under the deed, and surrender the portion held by their ancestor. Such confused conditions of the respective interests and estates conveyed cannot be contemplated as having been entertained or intended by the parties at the time the deed was made.

Supporting our interpretation is an outstanding fact which is always resorted to in cases of doubt—conceding that there is such a doubt in this case, and conceding it is of sufficient importance and weight as to require resort to that fact. It is this: Wellman or his heirs were made aware at the time the Lees conveyed the land to Allen that he was not only claiming to own but had attempted to convey the absolute unfettered

title thereto. Likewise, those of the Wellmans who were living were again informed of such claim when Allen conveyed a like title to plaintiff. Mrs. Lee had been dead for seven years when this action was filed, and none of them who would be entitled to the remainder interest in one-half of the tract of land, under appellant's construction and contention, ever complained or made any move to assert their title. Two-thirds of them in interest were adults—conceding that Wellman himself was dead—and their silence and inaction since Mrs. Lee's death clearly indicates their interpretation of the deed of their ancestors, A. Wellman and wife, to the Lees. It is not reasonable to suppose that they would suffer and permit others to occupy and possess and deal with their land for that length of time without making some sort of protest. Such acquiescing interpretation by the immediately interested parties is a strong indication of what was the intention of the parties to the Wellman deed in 1910 when it was executed. Our conclusion is that the grantors in that deed intended to part with their entire interest in the land conveyed to the Lees, and in attempting to measure the respective interests of their vendees they confused their language so as to create the technical doubt, which is the foundation of counsels' contention, but which should not prevail for the reasons hereinbefore indicated.

Reference might also be made to a well-established rule that courts may invoke, in situations such as is here presented, authorizing the transposition of employed words and phrases so as to bring them in accord with the evident intention of those employing them, and to supply glaringly omitted words so as to make the meaning clear. When done in this case, the confused language contained in the Wellman deed would read: "and to said parties of the second part, their heirs and assigns, but to be held jointly, one-half each, during the life of the said Sue F. Lee, and at her death the remainder of the one-half interest incumbered with her life estate to go to J. W. Lee and his heirs." Thus transposed, with the insertion of evidently omitted words, the meaning becomes clear and the intention of the parties is brought in accord with our interpretation hereinbefore given.

Wherefore, the judgment is affirmed.