## Campbell et al. v. Wells et al.

May 5, 1939.

210

E. B. ANDERSON and W. FOSTER HAYES for appellants.

J. H. THOMAS, R. A. BUCKLES, R. D. BRANIGIN and J. F. WILLIAMSON for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

On September 11, 1933, A. Campbell, Ida Howard and Oma Adams filed their petition in equity, naming Byron Wells and wife defendants. Plaintiffs below are appellants, and the defendants below, with the Federal Land Bank of Louisville, intervenor, are appellees.

The petition alleged that Sharlotta Campbell died intestate in 1876, leaving surviving, her husband Thomas Campbell, and three children, A. Campbell, Ida and Oma Campbell, and that Thomas Campbell died in 1932, leaving the three children as his only heirs at law.

At the time of the mother's death she owned a 96 acre tract of land in McLean County, conveyed to her by her parents, Allen and Patsey Howard, in 1873. It is alleged that upon the death of Sharlotta Campbell, which occurred prior to January 30, 1904, the parcel of land descended to and became the property of plaintiffs, subject to the curtesy right of Thomas Campbell. Thomas and Sharlotta were married prior to March 14, 1873, (date of deed to Sharlotta) and the three children were born prior to 1894.

They say that in 1904, acting under the belief that the father held a half interest and they a like interest in the tract of land, they conveyed to W. J. Owen their interest, and the grantee took and held possession of the whole tract until some time in February 1909, when he undertook to convey to Byron Wells, and that under said conveyance Wells has been in possession and occupancy of said tract since the death of Thomas Campbell, which occurred on April 27, 1932, and they ask for the fair rental value of said lands since that date.

Alleging that their several interests in said land is an undivided one-sixth, they sought to have the court adjudge each to be the owner of such interest, asking for division, setting apart to Wells an undivided one-half interest, according to quantity, quality and value, and for recovery from Wells of $100 per year as rental for the years 1932 and 1933.

Defendants answered denying the material allegations of the petition, and in a second paragraph averred that they bought from Owen on January 30, 1904, by general warranty deed, and that since their purchase Owen has died; that Thomas Campbell died previous to 1915 (error) and that upon his death any interest he might have had in the land terminated. They state that they, the defendants, and their immediate grantor have been in actual, open, continuous adverse possession of the tract of land since January 30, 1904, and ask that they be declared the owners in fee of the entire tract of land.

Copies exhibited show general warranty deed of March 14, 1873, Allen and Patsey L. Howard to Sharlotta Howard, the consideration thereof being $500, and the support of grantors during natural lives, and reserving lien for the fulfillment of that purpose. Arthur Campbell and wife, Ida Campbell Howard and husband, and Oma Campbell Adams and husband, conveyed to Owen by general warranty, the consideration being $200; the date of the deed being January 30, 1904.

At this point in the proceedings, the Federal Land Bank of Louisville filed its intervening petition and answer, showing that about July 8, 1921, Wells and wife executed to it a promissory note for $600, payment of which was secured by a mortgage on the entire tract of land involved. The mortgage carried the usual precipitating clause. This intervenor, further answering,

adopted the allegation contained in the answer of its co-defendants, Wells and wife, and joined in the prayer for dismissal of plaintiff's petition, and also prayed that its mortgage debt be adjudged a lien prior and superior to all other interests and claims against the property.

Plaintiffs filed reply in which they denied that they had conveyed to Owen, by deed of January 4, 1904, or at all, the entire tract of land described in the petition, or that they conveyed any greater interest than the one-half undivided interest. Further answering, they say that Owen, by his deed to Wells, February 24, 1909, conveyed no greater interest than he had acquired from them, to-wit: the undivided one-half, or that he had the right to convey any greater interest. They denied that the deed from Owen purports to convey more than their one-half undivided interest, and further that Thomas Campbell (father) died prior to the year 1915, or at any time prior to the date set out in their petition, April 27, 1932, which is the correct date of his death.

In an amended petition filed after some proof was taken, plaintiffs say that by mistake of the draftsman they failed to state that Ida Howard, after January 30, 1904, had died leaving surviving her the plaintiff J. D. Howard and four children as the heirs at law of said Ida Howard, who was Ida Campbell, and ask that these be, and they were, made parties.

They further say the land cannot be divided without materially impairing its value, or the value of each interest, and request a sale and division of the proceeds. Defendants, Wells and wife, amended their answer, denying that the land cannot be advantageously divided, but say that it can be so without impairment to the whole or any part. They further alleged that on October 26, 1883, Thomas Campbell executed and delivered to James Herndon a bond for deed for a parcel of land known as the "Allen Howard" farm, admittedly the same tract of land described in the petition, and later a deed was executed in conformity with the bond, but they are unable to discover that it was ever put to record.

On December 15, 1887, James Herndon delivered to J. W. Green a certain "deed of entrance covering upon the same premises involved." Green and wife, on October 24, 1893, signed a deed to W. J. Owen, conveying the same premises described. They allege that by reason of

the instruments above named, they and their immediate grantors acquired the life estate and any and all interest the said Thomas Campbell had in his wife's land; that they acquired their title from Owen, and he had acquired title to the remainder interest of the plaintiffs by the general warranty deed of January 30, 1904, and that the consideration stated therein was a fair and reasonable price for the remainder, burdened as it was with the life interest of W. T. Campbell and his subsequent grantees. They again plead that they and their predecessors in title have been in adverse possession, having the land under well defined boundary for more than fifteen years, and since 1873. They allege the placing of valuable and lasting improvements on the property, and ask protection of their interest.

This ended the pleadings, except that by agreement of the parties, all affirmative matter in pleadings not specifically denied stood controverted of record.

The court, upon submission, quieted Wells' title to the entire tract, and plaintiffs below are appealing. There is only one matter to be determined, and that is the effect of the deed of 1904 to W. J. Owen. The court in rendering judgment did not give his reason for adjudging that plaintiffs were not entitled to recover. It is said, however, that the court, construing the language used in the deed, in the light of surrounding circumstances, held that grantors intended to and did convey their entire interest in the tract of land

The only proof taken on the issues was that of certain persons who proved the death of Thomas Campbell in 1932, and some proof on the part of the son Arthur as to his and his sister's erroneous belief as to what interest they owned at the time they conveyed to Owen. It is not to be overlooked that the son testified that "it was our understanding that we only owned a half interest, and that our father owned the other one-half interest in the land in controversy in this suit." He was not asked, nor did he state that such interest was the only interest conveyed or intended to be conveyed. He knew that his father left Herndon in possession of the entire tract, and of Owen's later possession.

Such portions of the 1904 deed (appellants to Owen) as are necessary for a determination of this question, read:

"We (naming the three children and their

spouses) and in consideration of the sum of $200 * * * have granted, sold and conveyed and by these presents do grant, sell and convey unto the said W. J. Owen * * * all that certain lot or parcel of land situated in McLean County, Ky., and being an undivided one-half interest in the following described land, which came to the above mentioned parties, who are the only surviving heirs of Charlie Campbell, deceased. (Then follows description of the 96 acre tract.)

"To have and to hold the above described premises, together with all and singular the appurtenances thereto, as in any wise belonging unto the said W. J. Owen, his heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and defend all and singular the said premises to the said W. J. Owen, heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof."

That appellants were mistaken as to the interest they owned in the land at the time of the conveyance, is not disputed. Instead of their owning an undivided one-half interest, and the father a like interest, the latter only owned a life estate by curtesy and the three children owned the fee, subject to the father's life estate, which he had conveyed long prior to the deed of 1904. Decker v. Decker, 205 Ky. 69, 265 S. W. 483.

There are well-known rules of construction to be applied in the construction of instruments conveying landed estates. The character of a deed is to be ascertained from the intent and purpose of the parties executing it, as revealed from the language of the entire instrument, and this rule is ordinarily to be given preference over all others. Any confused or ambiguous language in the deed will be construed against the grantor, and in favor of the grantee. A deed in which the grantor creates a doubt as to the character or extent of the estate conveyed, such doubt will be resolved against the grantor, and the instrument interpreted as conveying the largest estate or interest which the grantor is capable of conveying. A conveyance of real estate may be construed as transferring an absolute title rather than a lesser, if the language employed is susceptible of two constructions. An acquiescing interpretation of a deed as an absolute conveyance by interested

parties is taken as a strong indication in cases of doubt of the intention of the parties.

The above rules are clearly laid down in the case of Kentucky Real Estate Board et al. v. Smith, 272 Ky. 313, 114 S. W. (2d) 107. In this case we held that a deed to a husband and wife, their heirs and assigns jointly, one-half to each during the wife's life, and at her death her interest to go to the husband, conveyed all the interest the grantor had in the premises, without reservation, rather than merely a life estate with remainder in fee to the husband of only the life interest of the wife, as the deed technically purported to convey. Some of the above rules have been applied in other cases in this jurisdiction. Fairchild v. Fairchild, 237 Ky. 700, 36 S. W. (2d) 337; Simons v. Bowers, 258 Ky. 755, 81 S. W. (2d) 604.

It will be observed that the granting clause purported to convey "all that certain lot or parcel of land" which was accurately described. The habendum clause to some extent confirmed the grant of the entire described premises, together with all and singular the rights and appurtenances. And in the warranty clause, the appellants for themselves, heirs and assigns covenanted to warrant the deed and defend "all and singular the said premises unto the said W. J. Owens." The deed in part purported to convey the entire premises as described.

We are not without direct and apparently controlling authority. The case of Duggins' Guardian v. Craig, 22 S. W. 558, 15 Ky. Law Rep. 124, is not as strong a case as that of Bagby v. Bagby, 151 Ky. 558, 152 S. W. 537, in which it is cited with approval of the applicable rule. In this case it appears that Bagby and wife owned jointly a certain tract of land. Later Mrs. Babgy, the husband joining, conveyed her interest to a son who later died, unmarried. Thereafter Bagby and wife executed a deed to a stranger, she conveying "all my undivided interest" in the tract of land, "being the one-half of the same undivided interest" conveyed by the husband and wife to the son, which she referred to as being "an undivided one-fourth of said land herein described." On the same day, Menifee (the stranger) conveyed to John Bagby the entire tract. Later the husband and wife died. His heirs-at-law took possession of the land, and a controversy arose between them and the heirs-at-law of the deceased wife, the latter

claiming that she had inherited from the deceased son, not one-fourth as the wife had conveyed, but one-half. This court found that under the provisions of Section 1400, Kentucky Statutes, that the son had received the land as a gift from the mother and, having died intestate, the whole of the estate theretofore conveyed passed to the mother, and held that it was the intention of the parties, as manifested from circumstances, and the document, to vest in John M. Bagby, all the interest which the wife had inherited from the son.

We further held that the deed in describing her interest as an undivided one-fourth, should not be permitted to defeat a manifest intention, and said:

"We rest our judgment on the ground that, as shown by the writing, the wife intended to vest in her husband all the title she had inherited from her son, and the fact that she misdescribed her interest in no wise changes the effect of the deed."

Counsel for appellant contends that the Bagby case is not applicable, since the court said:

"If this were a deed of bargain and sale, and it appeared that the purchaser had only bought an undivided one-fourth interest, a different question would have been presented."

The most that can be said of this expression is that it of itself shows there was no such question presented.

A reading of numerous cases, including those cited by both parties, discloses the fact that the rule hinted at in the dictum, supra, has not been applied. We are to ascertain the intent, whether the conveyance is one of bargain and sale, or otherwise. A recent and well reasoned case seems to us to be persuasive, because of the similarity of facts and language used in the granting instrument. We refer to Hoover v. Roberts, 146 Kan. 785, 74 P. (2d) 152, 157, 115 A. L. R. 182.

In that case the grantors, three in number, and of a class of five takers under a will, conveyed (evidently by separate deeds) what they believed to be their respective shares. The granting clause ran:

"* * * do by these presents grant, bargain, sell and convey unto said party of the second part, his heirs and assigns, all the following described real estate, situated in the County of Washington, State of Kansas, to-wit: The undivided one-eighth (1/8) in-

terest of the said grantor * * * being all the interest of said grantor as the heir at law and devisee under the last will * * * of Edward Roberts, deceased.''

It developed later, in a suit to construe the will, that grantor held a 1/5 interest in the estate, rather than 1/8 as had been conveyed. On proof the chancellor found that the deed was prepared by counsel representing grantors, and the grantee in accepting the deed and paying consideration, believed grantors were conveying all interest they had in the estate, and as a matter of law passed the 1/5 interest.

It is true in the case cited the court applied a statute of Kansas, which provided that every conveyance of real estate should pass the entire title, unless the intent to pass a lesser title should expressly appear, or such intent be necessarily implied in the terms of the grant. However, this statute is expressive of the general applicable rule. The court was compelled to base its decision on the intent of the parties.

The notes to the case supra, call attention to a number of cases in which the specific or impliedly granted estate has been enlarged so as to cover the entire interest of the grantor, where the instrument contained other language appearing to convey a lesser interest. These are cited: Willard v. Moulton, 4 Greenl. 14, 4 Me. 14; Murphy v. Murphy, 132 N. C. 360, 43 S. E. 922; Michon v. Ayalla, 84 Tex. 685, 19 S. W. 878; Merriman v. Blalack, 56 Tex. Civ. App. 594, 121 S. W. 552; Costello v. Graham, 9 Ariz. 257, 80 P. 336; McLennan v. McDonnell, 78 Cal. 273, 20 P. 566; Rogers v. Kinney, 122 Okl. 73, 250 P. 890; Leslie v. Harrison Nat. Bank, 97 Kan. 22, 154 P. 209, and the Duggins and Bagby cases, supra.

There are cases cited where in applying the rules of construction of ambiguous deeds, courts hold that there was no enlargement of the specific attempted grant, but as the commentator correctly remarks, (in annotating the Hoover case) ''The solving of the questions seems in a large measure to rest in the determination of the intention of the parties in any particular case.''

We are clearly of the opinion that it was the intention of the grantors herein, as gathered from the deed and circumstances, to convey to Owen all interest of

every kind and character they had in the estate. It may also be gathered from the meager evidence, that grantors intended to part with all right and interest they had in the estate. The grantee Owen, having theretofore acquired the father's interest, must have been of the belief that when he parted with a cash consideration, and took the deed in question, he was purchasing the entire interest of the grantors. While there is little proof on the question, from all the facts and circumstances surrounding the acquisition of the property by Owen, predecessor in title to Wells, we are of the opinion that the court correctly quieted appellees' title.

Judgment affirmed.