## Preston's Heirs v. Preston et al.

June 23, 1939.

John W. Caudill, Judge.

402

C. B. Wheeler for appellant.

C. P. Stephens for appellee Preston.

Z. Wells for appellee Warfield Gas Co.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

This appeal is an aftermath of a case of the same style here on former appeal, the opinion in which forms the beginning point of the complicated matters now presented. Preston et al. v. Preston's Adm'x, 245 Ky. 552, 53 S. W. (2d) 957. In that case M. L. Preston and wife, father and mother of Oscar Preston, who was the husband of appellant here, sought by appropriate action

to require the widow to make settlement of his estate, claiming to be entitled to portions thereof.

Oscar Preston died in 1925; the widow qualified as his administratrix, yet in 1932 had made no settlement, apparently being of the belief that Oscar had left no estate to be administered.

The original petition was filed in 1932, in which it was claimed that three parcels of land had been deeded to deceased and the widow jointly, so that at the death of Oscar (intestate) the parents were entitled to an undivided interest therein, subject to the widow's rights. They further claimed that at Oscar's death he owned personal property to the amount of approximately $15,-000. Issues were joined and upon report by the commissioner the court adjudged that deceased had left no personal property, and that the real estate described in the petition belonged in fee to the widow, because the husband's name had been written into the deeds by mistake; the commissioner was directed to and did execute deeds to the widow, giving her complete title.

This court reversed the judgment, insofar as it had held that Lora was the owner of the real estate, for reasons set out in the opinion, but affirmed it as to the finding that such personal property as was on hand at Oscar's death belonged to Lora. In reversing the case we held that Lora was entitled to an allowance for improvements which she had placed on the various parcels of real estate and in remanding, directed the cancellation of the deeds to Lora, thus leaving the title of an undivided one-half of the described real estate in the parents, subject to the widow's life rights.

We also directed that the court hear proof as to the enhancement of the vendible value of the real estate by reason of the improvements placed thereon by the widow, out of her means. It was also adjudged that upon rehearing the case she should be allowed such sums as she had paid out of her funds for the use and benefit of the estate. We pause to say in answer to certain contentions made by appellant, that this is the law of the case to the extent that such matters were considered by this court on the first appeal.

The mandate was filed below on April 14, 1933, the widow filed amended answer to the original petition setting out that no money had come to her hands as per-

sonal representative, and that she had paid from her funds on debts of her husband, a $50 grocery bill, $400 funeral expenses, and $400 for a monument. Also that she had paid attorney's fees in the prosecution of the "man who had killed her husband, $700", and other items.

She specified in this pleading the amounts she had spent on improvements on the various lots, enhancing, as she says, the value of the real estate to the extent of the sums fixed. She also set up her right of dower in and to the claimed interest in the real estate. This answer was denied by appellants, who plead affirmatively that since all the sums were paid more than five years prior to the filing of her answer, the statute of limitations (Kentucky Statutes, Section 2515) operated as a bar.

At this point appellants amended their petition to charge that since the death of Oscar, Lora had sold to her brother, Lawrence Keathley, tract No. 2, as described in the original petition, and that as he and his wife had been adjudged by the court to be the owners of an undivided one-half interest, the deed was void as to more than Lora's undivided interest. This deed was set aside without objection on the part of the widow.

An amended petition was filed by appellants setting up claims to royalties and rentals due under leases. In this it was alleged that Amanda, the wife of M. L. Preston, had died and the suit was prosecuted further in the name of the father and the children, six or seven in number. In the amendment, as had been directed by the court, lot No. 3 was more particularly described, and as we note, it was the same as lot No. 3 described in the original petition, the interest claimed being one-sixteenth undivided interest in 350 acres of land. This land had been owned by L. D. Keathley, the father of Lora; he having died intestate, it descended to his four children. However, in 1919 one of the daughters of Keathley, Flossie Robinson, conveyed to Lora and her husband, and her brother Lawrence, her undivided interest. It was claimed that by reason of our holding, upon the death of Oscar, appellants became the owners of such interest as Oscar had, which, if the allegations of the answer be true, would be one-fourth subject to the widow's life interest.

It was then alleged that the heirs of L. D. Keathley

in 1924, and the purchasers of the daughter's interest, had leased the mineral rights in the whole tract. That no wells were drilled under that lease, but later the tract was leased to the Warfield Natural Gas Company, who paid delay rentals to the amount of $350. Oscar Preston died in 1925, and the lessee paid yearly rentals amounting to the sum of $1,750. On December 19, 1928, the same lessors (excepting Oscar) executed a new lease to the Warfield Company, and besides paying the delayed rentals, paid such a sum as made the rentals amount to $2,100. Appellants claimed to be entitled to one-sixteenth thereof.

It was alleged that development took place under the Warfield Company lease, and about May, 1930, two gas wells were brought in, and gas was produced to the extent of three hundred million cubic feet, and that, at the reasonable price of 24¢ per thousand cubic feet, appellants are entitled to one-sixteenth of whatever amount of gas be disclosed to have been marketed, which as they estimate would be about $4,500 at the time of the answer.

In answer to this second amended petition it was denied that appellants were entitled to any part of the undivided one-sixteenth of the 350 acre tract, but if entitled to any portion the interest would be one-twentieth rather than one-sixteenth, because L. D. Keathley left four children surviving him, and his widow elected to and did take a child's part, which would have made the interest of each, one-fifth of the tract. The daughter, Flossie Robinson, had deeded her interest to Lora and Oscar, one-half, and to Lawrence one-half, making appellant's interest one-twentieth, if they had any interest at all, so there appears a slight difference in claimed interests.

Further answering, they denied the allegations of the amended petition with regard to the leasing of their purchased interest in the tract to the Carter Company, or by subsequent lease to the Warfield Company. They say that they only leased to the operating companies such part of the 350 acre tract as the heirs had received by inheritance from the father, and not the interest they had bought from the daughter, Flossie Robinson. If this be true then the first lease executed by Oscar and Lora Preston and Lawrence Keathley did not carry with it the portion of that undivided interest, which appel-

lants claim was either one-sixteenth or one-twentieth. They say that all parties understood that the lease did not embrace the Robinson interest.

Appellees denied the allegations of the amended petition with regard to delayed rentals, amount of gas produced and marketed, royalties and rentals paid, and that appellants were entitled to any portion thereof.

The affirmative allegations of this answer were denied by appellants, and at this point the Warfield Company appeared and plead to so much of appellee's answer as challenged their lease; that is, to the extent that Lora and Lawrence Keathley had specifically plead that the lease did not embrace the portion of the tract which had been purchased from the daughter. In this answer (which is made a cross-petition against the widow and Lawrence Keathley) they disclosed that there had been, up to April 1934, 303,693,000 cubic feet of gas marketed, but the reasonable price was 12¢ per 1,000 feet, rather than 24¢.

For affirmative plea, and as a cross-petition against Lora Preston and Lawrence Keathley, they plead (exhibiting the lease) that under the implied covenants and provisions thereof, the lessors warranted that they had good title, and if it should develop that appellants are the owners of an undivided interest, they should be entitled to recover against the widow and Lawrence Keathley, and the other lessors, who were the widow and children of L. D. Keathley, deceased. In an amended answer and cross-petition, the Warfield Company asserted that the gas wells were drilled by them in the faith and belief that the lease carried all interests in the tract; that the wells were drilled prior to April 1934, when appellants first made their claim, and that there was no protest or objection to the drilling, by the then plaintiffs, Preston and wife. They further say that if plaintiff should be adjudged an interest in the royalties it should be based on the lease price at the rate of one-eighth of the wholesale market price at the well, at the usual local market price; that if it be adjudged that appellants are entitled to share on any other basis than the proportionate royalty, they should be required to contribute a portion of $37,153.14, cost of development and operation.

After some proof appellants alleged that up to July 31, 1936, the Warfield Company had marketed 341,891,-

000 cubic feet of gas, and that they were entitled to recover one-sixteenth of the proceeds, at the rate of 24¢ per 1000 cubic feet. The Warfield Company admits the quantity, but denies that appellants were entitled to any recovery, and reiterates that if so it would be upon terms and conditions stated in their original and amended answer and cross-petition, and in the lease.

On January 25, 1936, by agreement of parties, the affirmative allegations of the pleadings of the Warfield Company were controverted, except as they did not affect the widow Lora Preston. A motion to submit was sustained, insofar as it affected the "branch of the case between plaintiffs (appellants) and Lora K. Preston only." All questions relative to the issues made between all the parties relative to the gas or lease litigation are not submitted. The case on this branch was continued for preparation.

Upon submission on "this branch of the case" (February 29, 1936), the court adjudged that the estate was indebted to the widow in the sum of $50 for grocery bills paid out of her funds, due at the time of Oscar's death; $400 paid for funeral expenses, and $400 paid for a monument. Other claims set up in her pleading for sums paid out of her funds for the use of the estate were disallowed. She excepted, but did not pray appeal, nor has she asked cross-appeal.

The court further adjudged that the widow was entitled to recover from the estate the enhanced value of the real estate by reason of improvements she had placed thereon at her own expense, "said enhanced value to be determined by the sale thereof as herein directed."

Lots Nos. 3, 4, 5 and 6 in Block A, New Martin addition, in the town of Martin; a lot situated in Floyd County near the C. & O. Depot, described, and said to contain one-eighth acre, were ordered sold. The commissioner was directed to offer first the improvements on the lots for sale, separate from the lots, "crying off each of the said buildings thereon (the lot near the C. & O. Depot had a small store building on it; the four small lots contained a dwelling house and a storeroom or restaurant) separate and apart, and then as a whole, to the highest and best bidder." He was then to offer said tracts or lots of land for sale, without the improvements, "just the naked lots," and cry off same to the

highest and best bidder. Then to offer said tracts or lots together with the improvements thereon as now situated and located, and cry off the same to the highest and best bidder. The court, of course, directed the terms and conditions of sale, appraisement and advertisement, and directed a report at the next term, and further reserved the right to fix the enhanced value of the estate by reason of the improvements, "from the sales and appraisements made by the commissioner."

It was further adjudged that the widow is entitled to a one-third interest for life, in all the real estate involved, and the commissioner, in making the sales directed, was ordered to sell same subject to the one-third life estate of the widow in the whole property. "All other questions in this case not herein specifically passed on are reserved for further adjudication." To this judgment plaintiff (appellant) excepted and was granted an appeal.

In appellant's brief it is urged that the judgment granted the widow for payments made on behalf of deceased's estate is erroneous because there was no competent evidence to support the claims. It is true that the widow testified as to payments made after the husband had died. This objection is based on the provisions of Section 606 of the Civil Code of Practice. This contention is not meritorious. The widow did not attempt to testify as to any communication between herself and husband during marriage, nor was she testifying against the husband. These facts to which she testified came to her independently of the marriage relation. Johnson's Adm'r v. Pigg, 242 Ky. 631, 47 S. W. (2d) 63. We note that the chancellor disallowed a number of her claims, and as we read the record we may well assume that in undertaking to establish them, or some of them, the court was of the opinion that the offered testimony was not in accord with the Code section, supra.

On the question of limitation, while that question may or may not have been presented on the first appeal supra, the court followed the explicit directions of this court in relation to any valid claims which might be presented by the widow, thus closing the door to the plea of limitations, particularly so when her amended pleading was timely filed.

It is further complained that the court erred in

directing that "the enhanced value be determined by the sale" of the real estate as directed, and appellant mildly objects to the manner in which the court directed the sale to be made, and the manner of sale. This was said to be error, because the whole property should have been sold and her dower right in the proceeds ascertained. We find a deeper objection than this.

The remaining objections relate not so much to this judgment as to the manner and method of sale, the outcome of the sale, and charged irregularities, and may be more properly taken up on a companion appeal. On June 29, 1936, the chancellor directed entry of another judgment. He first set out that upon consideration of the original and amended report of the master commissioner, filed May 26, 1936, to which no exceptions had been filed, the report was confirmed. The court then recited:

"It appearing from report that the restaurant lots and dwelling house lots brought at said sale the sum of $1025.00, and that the defendant was the successful bidder therefor, said sale is approved and confirmed, and deed is hereby ordered to be made to her for tract No. 1.

"It further appearing that tract No. 2 * * * sold for the sum of $100 and was cried off to the defendant, and there being no other bidder, said sale is confirmed and deed ordered.

"It further appearing that certain bids were made by defendant for the improvements on said lots * * * she being the owner of the improvements and having made the highest bids for the lots without the improvements, and it appearing that the costs of removing said buildings would not justify the removal thereof, the bids made on them are rejected, and any sales bonds executed are hereby cancelled.

"It is further adjudged that the value of one-half interest of the estate of Oscar Preston, deceased, in and to the lots * * * is hereby fixed at the sum of $562.50, being one-half the amount of the bid of defendant.

"The court further adjudges that the life right of defendant, widow of deceased, be and the same is fixed at the sum of $127.00, making the net value

of the interest of deceased $434.80, and it is further adjudged that the judgment heretofore entered in favor of defendant ($850.00) against the estate of Oscar Preston, be credited with said sum of $434.80, as of April 27, 1936.

"It is further adjudged by the court that the improvements placed on said lots by defendant, has enhanced the market value of the lots in the sum of $297.00, and that she is entitled to recover herein against the estate of Oscar Preston said $297.00 with interest from March 31, 1936, in addition to the amounts set out in the former judgment, $850.00, Cr. By $434.80.

"To satisfy the judgment herein and heretofore rendered against the estate of deceased, subject to the credit of $434.00, the master commissioner of the court is hereby ordered and directed to sell the following described real estate belonging to the estate of deceased:

"One undivided one-half in the following described tract of land, situated on left Beaver Creek &c. This is the interest of Bessie Robinson in the Keathley land, sold by Bessie to Lawrence Keathley and Lora and Oscar Preston, said sale to be made subject to Lora's life estate. The sale was ordered to be advertised, and was to be made on a six month's credit, bonds to be taken, unless defendant becomes the purchaser thereof at an amount equal to or smaller than the amount of her (balance of) judgment herein."

At this point it may be said that the order of sale, the sale and commissioner's report, and all orders made following, were of such irregularity that this court cannot see its way clear to uphold such rulings and orders.

In the first place, we find nothing in the Code, statutes, nor in any decision of this court authorizing sales of jointly owned property, in the manner in which these sales were ordered and carried out. The unfairness of the result is shown in the reported fact that the widow, except in one instance, was the only, and in all cases successful, bidder. Under the directions of the court no other result could have been reasonably expected, or attained. The method and manner of selling real estate, where there are joint owners, is clearly laid down by

the Civil Code of Practice. Likewise the manner of sale for debt is clearly laid down. Neither was followed in the instant case.

However, the outstanding reason that the sale, and all orders relating thereto, were irregular and voidable is that none of the parties had asked for a sale. The plaintiffs, as we look to the original petition in the record on former appeal, only asked that their rights be adjudged and "the land be divided among the parties, giving to the defendant (widow) a one-third interest for life and the balance to these plaintiffs." Of course what was meant was that the widow was entitled to a fee in one-half the real estate, appellants to be adjudged the other one-half subject to the widow's dower rights. Still they suggested no sale, nor do they so ask in the numerous pleadings later filed.

When we look to the appellee's (widow's) pleadings, we find that she nowhere asked for or suggested sale. Her only request was for a judgment for the amount paid by her out of her own funds, on behalf of the estate, a judgment for the amount spent by her in improving the property, and a lien against the one-half which might be adjudged to plaintiffs, to reimburse her for the expended amounts.

Not speaking with judicial knowledge, but from a perusal of the record, we can see no reason for a sale of any of the property, though on a proper showing such reason may develop. Under all the circumstances, and from such loose proof as appears in the transcript, it is evident that the interest of appellants is bound to be of no great amount, hence a division might well be ordered, particularly so when that is what is sought, rather than a sale. There should be no difficulty in showing by proper proof the enhancement of the value of the various lots by reason of the lasting improvements placed thereon by the widow. A sale, ordered and conducted in the manner manifested, is neither fair nor according to the provisions of law.

This apparently leaves for consideration such issues as were raised by the pleadings as to the leased property, on which was situated the gas wells. On this point it occurs to us that the amended pleadings did set up a cause of action which might, if the matter be properly developed, entitle plaintiffs to a portion of the delayed rentals collected and paid after the death of

Oscar Preston, since under our opinion they were the owners of one-half of one-fourth the interest deeded by Flossie Robinson to Oscar and Lora Preston (subject to the widow's life interest) and Lawrence Keathley. Their pleading also, as to their rights to an interest in the royalties collected after development, which began after Oscar's death, has merit, because they were the owners of the interest, as we held, and they had never executed a lease for such interest, nor had Oscar. We do not undertake to adjudge or fix any interest either in royalties or delayed rentals, since the court, as we think, erroneously dismissed their claim.

As to the issues raised between the parties, and as an incident, between the widow and Lawrence Keathley and the Warfield Company, we express the opinion that the lease from the Keathley heirs embraced not only the interest they inherited from their father, but included such interest as they had acquired by purchase from the daughter, Flossie Robinson. Campbell v. Wells, 278 Ky. 209, 128 S. W. (2d) 592. Hence it is that the court erroneously dismissed the cross-petition of the Warfield Company as against the widow and her brother Lawrence. This phase of the case should be further (and better) developed, as should also the question as to whether Oscar's interest in the 350 acre tract was in reality one-sixteenth or one-twentieth thereof.

Before closing we cannot refrain from advising counsel for appellees that the court's disposition was much toward reversing the judgment in all respects, insofar as it involved issues between the original parties, because of the fact that counsel for appellee, the widow, has not seen fit to assist us by filing a brief. We would and should have done so, but for the fact that the documents called "brief" and "supplemental brief" filed on behalf of appellants, were of such character and nature that they were of little or no assistance to us, except in pointing out the steps taken throughout the proceedings, a matter which we usually observe by reference to the record. What we have said has no reference to a brief filed on behalf of the Warfield Company, brought into the case by reason of pleadings by the original parties.

The judgment is affirmed in the respects hereinabove indicated. It is reversed in respect to the proceedings insofar as the order of sale and sale, reports

and confirmation of sales are concerned. It is also reversed on the court's ruling in dismissing appellant's amended petition, setting up claim to royalties and in dismissing the Warfield Company's cross-petition. These matters, if the parties are unable to reach an amicable settlement, should be developed and adjudicated by the court.

Affirmed in part. Reversed in part.