**Nancy C. KAVANAUGH et al., Appellants,**

v.

**Albert G. CLAY, Trustee, etc., et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 25, 1955.

As Modified March 23, 1955.

William B. Gess, Jack F. Mattingly and John G. Atchison, Jr., Lexington, for appellants.

Clay & Edwards, Mt. Sterling, Earl B. Rose, Beattyville, John A. Judy, Lexington, for appellees.

MOREMEN, Justice.

Upon motion for summary judgment, after an affidavit and exhibits had been filed, the circuit court held that appellees were the owners of fee simple title to certain oil

and gas properties in Lee County and adjudged that their title be quieted.

M. C. Clay, deceased, owned in fee simple oil and gas properties. In the early years of the Depression he became financially involved and, on December 28, 1933, filed a voluntary petition for adjudication of bankruptcy. In the course of those proceedings a composition of creditors was effected (apparently by the efforts of W. C. Clay, his nephew) and the district court was petitioned by M. C. Clay, Joe M. Kavanaugh, and others, that "J. M. Kavanaugh as trustee in bankruptcy for the bankrupt M. C. Clay, be directed to deliver to W. C. Clay and Lizzie Clay all of the assets of the bankrupt in his hands and be permitted to renounce any and all interest that he has in the estate of the bankrupt as such trustee."

After approval and in discharge of the plan of settlement, the bankrupt and his wife executed a deed which reads in part:

"That the parties of the first part (M. C. and Stella Clay) * * * have bargained and sold and do hereby convey unto the second parties (W. C. and Lizzie Clay) in the proportions hereinafter set out, the following described oil and gas royalties and interest in oil and gas as follows:

"Item 1. One undivided 1/64 oil and gas royalty in what is known as the Tom Booth farm lying in Lee County * * *."

Following Item 1, were described about 44 other tracts and leases, and approximately the same designation was used, i. e., "oil and gas royalty."

It is through this deed that appellees claim quiet, fee simple title to all the mineral interest in the property which M. C. Clay owned at the time he executed the conveyance. Appellants, who are devisees under the will of M. C. Clay, insist that under the deed appellees received only a royalty interest—not all of the interest which M. C. Clay owned at the time—with the result that they are owners of all the mineral interests which are not classified as royalty interests.

On this appeal, appellants contend first, that the deed is plain and unambiguous; conveys only a royalty interest and therefore no extrinsic evidence by way of the affidavit of W. C. Clay and exhibits filed should have been considered on the motion for summary judgment.

■ We cannot agree that the terms of the conveyance clause are so clear that no explanation is required. If we note again that the conveyance was made of "oil and gas royalties and interest in oil and gas," instantly we are assailed with doubt of its meaning because if the conveyance was to be restricted to royalties, why was "interest in oil and gas" added? The fact that the deed in a number of cases refers to surface tracts rather than specific leases adds to our uncertainty. In such circumstances, the court may welcome additional facts so that the intent of the grantor may be invoked. Campbell v. Wells, 278 Ky. 209, 128 S.W.2d 592. In Kalberer v. Grassham, 282 Ky. 430, 138 S.W.2d 940, 942, which involved the question of whether a deed to mineral rights included sandstone rock, the court said:

"The word 'mineral' is not a definite term and is susceptible of limitations or extensions according to the intention with which it is used and each case must be decided on the language of the instrument, the surrounding circumstances and intention of the grantor."

■ The facts, which indicate Clay's intention to convey all he had, are these: M. C. Clay, a man of good reputation, in financial trouble, accepted the benefits of the federal bankruptcy laws. As is required, he filed with his voluntary petition a schedule of all of his real property and included in this catalogue were the oil and gas properties. The description of them (which corresponds to that in the deed) was taken from an appraisal report which had been prepared some years before by James I. Tucker, Inc., and subsequent draftsmen, when preparing instru-

ments affecting the mineral properties, had taken the easy route and followed the convenient description, although all along M. C. Clay had owned the mineral rights subject to certain leases—not merely royalty rights. In due time after he had filed his solemn petition in bankruptcy and at the first meeting of creditors, the bankrupt, under oath, was asked and answered:

"Q. Were these schedules read over to you? A. Yes, sir.

\* \* \* \* \* \*

"Q. In other words, it is a full and complete list of all of your property of all kinds? A. Yes, sir."

It was, of course, after this meeting that the trustee was ordered to renounce all interest in Clay's property and the deed here involved was executed.

In 11 U.S.C.A. § 110, it is provided:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by the operation of law with the title of the bankrupt \* \* \*."

■ The trustee was not only vested with title, but he was charged with knowledge that M. C. Clay owned fee simple title to the mineral rights because the source of title was given in the deed and reference to those public records would have disclosed Clay's entire interest.

In a case not dissimilar to this one, Combs v. Virginia Iron, Coal & Coke Co., 197 Ky. 476, 245 S.W. 896, the source of title was given as follows:

" 'Being the lands I bought from Nicholas Combs, Sr., and part patented in my name, containing 925 acres, sold by the acre.' "

The court used these words to crystallize the intention of the party, saying:

"These words identify the land with reasonable certainty and show very plainly that it was the purpose of the grantor to convey the minerals in all the lands which he had purchased from his father and had not theretofore conveyed to others."

We can only conclude that M. C. Clay intended to list all of his property in bankruptcy and to convey all of his property in settlement of the compensation plan and that the trustee in bankruptcy intended to renounce interest in all of the mineral. It would be a strange result if we assumed, under the circumstances of this case, that M. C. Clay, with the acquiescence of the trustee, fraudulently withheld assets from the bankruptcy proceedings so that, after his death, his devisee might be benefited. We have condemned this practice where the bankrupt himself attempted to assert interest in unlisted property. In Felty v. Olwan, 284 Ky. 762, 145 S.W.2d 1059, 1060, we said:

"Without questioning the soundness of those decisions in other jurisdictions holding that without petitioning the Court for authority so to do, a trustee in bankruptcy, by his failure to act, may be held to have elected not to take title to a particular asset of the bankrupt, we are, nevertheless, certain that the application of this rule should be confined to scheduled assets, and that it would be contrary to both the letter and the spirit of the Act, as well as against public policy, to permit a bankrupt to assert title to property, tangible or intangible, which he failed to list. Stephan v. Merchants' Collateral Corporation, 256 N.Y. 418, 176 N.E. 824."

Appellants contend that the affidavit of W. C. Clay which was filed in support of the motion for summary judgment should not be considered because it contains statements as to opinions and as to conclusions of law and, further, it is not admissible under paragraph (c), section 2 of KRS 421.-210 (formerly section 606 of the Civil Code).

We have found, as perhaps did the trial court, little need to resort to the affidavit in order to reach our conclusion because other exhibits furnish a clear view of the true situation here.

Judgment affirmed.