## William G. Combs v. Virginia Iron, Coal & Coke Co.

## Nicholas C. Combs v. Virginia Iron, Coal & Coke Co.

(Decided January 30, 1923.)

### Appeals from Perry Circuit Court.

1. Deeds—Property Conveyed.—A deed conveying "all the coals, oils, metals, gases and mineral products lying, being upon and under

our lands in Perry county, state of Kentucky, and described as follows, viz.: On the waters of First creek, waters of the North Fork of the Kentucky river, adjoining the lands of John Hensley, William Stacey and Isaac Hurst, being the lands I bought from Nicholas Combs, Sr., and part patented in my name, containing 925 acres, sold by the acre," covers the minerals in all the lands which the grantor bought from Nicholas Combs, Sr., and had not theretofore conveyed to others.

2.   Champerty and Maintenance—Sufficiency of Evidence—Quieting Title.—In an action to quiet title, evidence held insufficient to show that the deed made by the father of plaintiffs, conveying the minerals in the tract of land, was champertous as to them, on the ground that several years prior to the time that they received their deeds they had purchased and paid for the land under an oral contract, and were in the adverse possession thereof when the mineral deed was made.

FAULKNER & FAULKNER and W. A. STANFILL for appellants.

WOOTTON & MORGAN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in each case.

About the year 1860 Nicholas Combs, Sr., conveyed to his son, Elhanan Combs, a tract of land on First creek in Perry county containing about 1,200 acres.

In the year 1885, Elhanan Combs conveyed a portion of the land to his son, Drew Combs. He also conveyed a small portion of the land to his son-in-law, John Hensley. Shortly thereafter he sold and conveyed to his son-in-law, V. C. Duff, a portion of the land. The part conveyed to Duff was on the lower end of the main tract. Duff's deed was not recorded, and after Duff's wife died, he let Elhanan Combs have the land back.

On July 19, 1887, Elhanan Combs, for the recited consideration of $600.25, sold and conveyed to T. P. Trigg, "All the coals, oils, metals, gases and mineral products lying, being upon and under our lands in Perry county, State of Kentucky, and described as follows, viz.: On waters of First creek, waters of the North Fork of the Kentucky river, adjoining lands of John Hensley, William Stacy and Isaac Hurst, being the lands I bought from Nicholas Combs, Sr., and part patented in my name, containing 925 acres, sold by the acre." The deed was duly recorded and the title to the minerals thereafter passed by mesne conveyances to the Virginia Iron, Coal & Coke Company. Upon being surveyed in the year 1902, the boundary was found to contain 898.83 acres.

On March 27, 1889, Elhanan Combs conveyed to his son, Nicholas C. Combs, a portion of the land by deed which was duly recorded on March 30th of that year.

By deed dated June 17, 1902, and recorded on September 19, 1902, Elhanan Combs conveyed to his son, William G. Combs, another portion of the land lying immediately above the boundary conveyed to V. C. Duff. In the year 1915, separate actions were brought by William G. Combs and Nicholas C. Combs against the Virginia Iron, Coal & Coke Company to quiet their title to the minerals underlying their respective tracts. The cases were afterwards consolidated, and on final hearing the petitions were dismissed.    To reverse the judgments, these appeals were prosecuted. Nicholas C. Combs has since died, and the action has been revived in the name of his legal representatives.

The first contention of appellants is that the description in the deed from Elhanan Combs to Trigg does not cover their respective tracts.   In this connection it is insisted that there was a survey made by one, Buck Engle, just before the sale of the mineral, and this survey shows that Elhanan Combs intended to convey only the 400 acres covered by the survey. There is nothing in the record to connect the purchaser or his agents with the Engle survey, and if the survey was made at their instance, or was even known to them at the time of the conveyance, it is not probable that they would have accepted the deed and paid for the land by the acre when they knew that it contained several hundred acres less than the quantity represented in the deed.   After giving the waters on which the lands were located and mentioning the adjoining landowners, we find the following: "Being the lands I bought from Nicholas Combs, Sr., and part patented in my name, containing 925 acres, sold by the acre."   These words identify the land with reasonable certainty and show very plainly that it was the purpose of the grantor to convey the minerals in all the lands which he had purchased from his father and had not theretofore conveyed to others.   We therefore conclude that the deed covers the tracts owned by appellants.

But appellants insist that the deed conveying the minerals was champertous, because each of them had theretofore purchased his tract from his father by oral contract, and was in the actual adverse possession thereof when the deed was made.   The case is one where

the title to the land was in the father when he sold the minerals. He conveyed a portion of the land to one of his sons two years later, and to another fifteen years later. Twenty-eight years after the minerals were conveyed, and twenty-six years after one of the sons received his deed, and thirteen years after the other obtained his conveyance, the sons bring a suit to quiet their title to the minerals and insist that the mineral deed was champertous because they had already purchased and paid for the land and were then holding it adversely. In such a case the owner of the minerals is necessarily at a great disadvantage, both because of the lapse of time and the practical impossibility of disproving an oral contract between father and son. Therefore, to sustain such a claim, the evidence should be clear and convincing. Opposed to the testimony of appellants are the following circumstances: Ordinarily one does not buy and pay for land several years before he receives his deed, especially where the grantor, as was the case with Elhanan Combs, was in the habit of making deeds when he sold other portions of his land. Appellants lived with or near their father, and it is hardly probable that their father did not discuss with them so important a transaction as the sale of the mineral. Though they say that their father told them that he had sold only the mineral in 400 acres, they must have known that he received pay for about 1,200 acres, and that the deed conveyed the minerals in all the lands to which he then had title. Therefore, if they had already bought and paid for the land, including the mineral, the natural thing for them to have done would have been to protest against the sale, or take other steps to protect their rights. But even if we assume that the father did the unnatural thing of selling without their consent the minerals in land which he had already sold to his sons, and that appellants did not then know or acquire knowledge of the transaction during the next fifteen years, the evidence leaves no doubt that they did know in the year 1902 that appellee was claiming the minerals in their respective tracts, for in that year they assisted appellee in making a survey, and though they claim that the survey did not cover their lands, their statements are disproved not only by the testimony of the surveyor, but by the survey itself. Notwithstanding this fact, they waited thirteen years longer before bringing suit to quiet their title. Viewing the case in the light of all the circumstances, and particularly

the conduct of appellants themselves, it seems to us that their evidence is not sufficiently clear and convincing that they had purchased, paid for and taken possession of their respective tracts at the time the mineral deed was made.

. Judgment in each case is affirmed.