### VIRGINIA IRON, COAL & COKE CO. v. PRICE et al.

Court of Appeals of Kentucky.

Dec. 6, 1951.

Rehearing Denied March 14, 1952.

E. C. Wooton, D. G. Boleyn, Hazard, for appellant.

Napier & Napier, Hazard, for appellees.

STEWART, Justice.

This appeal is from a judgment of the Perry Circuit Court dismissing plaintiff's petition, thereby adjudging that it is not the owner of the minerals and mining rights in dispute in this action. Plaintiff appeals.

Appellant's petition sought to recover from appellees the value of the coal mined and removed by them from the particular tract in question here, claiming it is the owner of the minerals and mining rights underlying the land but admitting appellees have title to a six-sevenths interest in the surface; and, in addition, it asked for in-

junctive relief against any further mining by these appellees on this tract. Appellees, in an amended answer, denied the title of appellant and its right to recover; alleged affirmatively that they owned a six-sevenths interest in the legal title to both the surface and mineral rights in the land; and by counter-claim prayed the lower court to vest all minerals in them and to quiet their title to this tract.

An important deed in appellees' chain of title is one from Joab H. Begley and his wife, Mariah Begley, to John E. Sandlin, dated March 2, 1906, by which the former conveyed to the latter the following described property, subject to a certain reservation hereafter mentioned:

"A certain tract of land lying and being in Perry County, Kentucky and being the same tract of land conveyed to the party, of the first part by John M. Begley & wife by deed bearing date of 21 day of July, 1887, which is duly recorded in deed book No. H. at page 28, Perry County Court Clerk's office, Lying on Gay's Creek, and bounded as follows, to-wit: Beginning at the mouth of the first drain below the mouth of the Spruce Pine fork; thence with said drain to the top of the point between the Spruce Pine fork and the Sweeten fork; thence with the ridge to the head of said fork; thence around the head of said fork with the ridge to a conditional line between Jesse S. Begley and Elisha Begley; thence with said line to the top of the hill between the Brushy fork and Gay's Creek; thence with the top of the hill opposite the beginning; thence a straight line to the beginning.

"First parties have heretofore sold the mineral & coal & timber under 14 inches to a Co., now reserve same in this deed, but second party is to have such coal as he needs for farming purposes and enough of the timber under 14 in. for general farming purpose. Second party is to have all timber over 14 inches on said land."

Through mesne conveyances appellant claims the mineral rights in appellees' land by virtue of a deed from Joab H. Begley and his wife to T. P. Trigg, Trustee, a part of which, insofar as it is pertinent here, we copy: "That for and in consideration of one hundred dollars the receipt whereof is hereby acknowledged, the said parties of the first part do hereby sell, grant and bargain to the said party of the second part, all the coals, metals, oils, gases and mineral products—lying being upon and under our lands in the County of Perry State of Kentucky and described as follows, viz: Lying on Gay's Creek adjoining Elijah H. Begley's and containing 200 acres sold at 50 cents per acre reserving to myself the privilege of using coal, for family use. Deed from John Begley who bought same from Lewis Smith who bought from Elijah Begley, with the right and privilege guaranteed unto the said T. P. Trigg, Trustee heirs or assigns to enter said lands at any and all times to mine and transport said coals, oils, gases, metals and mineral products with all other customary mining privileges and enough small timber for mining purposes * * *."

It is admitted that appellant and appellees claim title from a common source, namely, from Joab H. Begley. The chain of title from John E Sandlin to appellees is clear and beyond question. Nevertheless, since there was a reservation of the minerals in the deed from Joab H. Begley and his wife to John E. Sandlin the Chancellor held, and we think correctly so, that he could not adjudge appellees to be the owner of the coal under their land. He therefore refused to quiet title to the mineral rights in them.

The difficult question to be resolved is whether appellant has shown itself to be the holder of the legal title to the coal and other minerals underlying the land claimed by appellees. The Chancellor, in dismissing the petition on the ground that appellant had failed to meet the burden imposed upon it of proving its title to the coal, was of the opinion that appellant must recover on the strength of its own case and not on the weakness of appellees' claim. Thus, the effect of denying appellant the right to maintain its action and of adjudging appellees not to have title to the coal underlying their land leaves undecided the question of the ownership of the disputed minerals.

Gay's Creek, according to the record, is from 3 to 4 miles in length and empties

into the Middle Fork of the Kentucky River. It has many small tributaries or forks, two of which are Stable Fork, flowing into Gay's Creek from the northeast, and Spruce Pine Fork, joining this same creek from the southeast. Stable Fork is approximately one-fourth mile west of or downstream from Spruce Pine Fork. A high ridge separates the two forks. The controversial tract, 133.69 acres in area, lies on both sides of Gay's Creek and includes within its boundaries the entire length of Spruce Pine Fork. It is to be noted that appellant's deed embraces 200 acres.

Joab H. Begley acquired title to the land later acquired by appellees from John M. Begley and his wife, Nancy, by deed dated July 21, 1887. On the same day the former executed and delivered the deed to T. P. Trigg, Trustee. In this last mentioned instrument the source of title is set forth thus: "Deed from John Begley who bought same from Lewis Smith who bought from Elijah Begley, * * *." The deeds from John Begley to Joab H. Begley, from Lewis Smith to John Begley and from Elijah Begley to Lewis Smith were never recorded and are not included as a part of this record.

The determination of the issue involved in this litigation seems to hinge upon the answer to the question: Was John Begley the same person as John M. Begley? Appellant in its brief would have us presume that John Begley and John M. Begley were one and the same person, yet it offered no evidence to substantiate this claim. On the other hand, appellees pitch their case upon the theory that John Begley and John M. Begley were different men; that John Begley never owned land in the region where appellees' property is located; but that he did have title to certain real estate on Stable Fork, situated below and about a mile from appellees' property on Spruce Pine Fork. They introduced positive proof to support their contention.

Appellee, Elmira Price, testified that John M. Begley was a brother of her mother and therefore was her uncle; that John Begley was her great uncle and he was the father of Joab H. and Elijah Begley and the father-in-law of Lewis Smith; that Joab H. Begley, John Begley, Elijah Begley and Lewis Smith all owned land on Stable Fork, about one mile from appellees' tract; and that John Begley never, to her knowledge, owned land on Spruce Pine Fork. Sallie Gay, a sister of Elmira, and Emma Rains, a relative of the two sisters, in their depositions, corroborated almost to the detail the evidence of Elmira Price. Sallie Gay on recall stated that John Begley married a woman named Jane and that the name of the wife of John M. Begley was Nancy Ann. All of the foregoing proof stands uncontradicted in the record. Accordingly, we conclude that it is clearly established that John Begley and John M. Begley are different persons.

We think it is very evident that the description of the property in the conveyance of July 21, 1887, from Joab H. Begley and his wife to T. P. Trigg, Trustee, is not sufficiently definite that one can take the deed and locate the land with any reasonable degree of certainty. To overcome the obvious lack of a good description in the deed appellant strongly relies upon the evidence of A. R. Eckart, its chief engineer and a surveyor with twenty-nine years experience, who testified that appellant had made three surveys of its holdings in this region of Perry county, the first one as far back as 1901 and the last one about a year back, and that each survey showed the land in dispute to lie within appellant's boundaries. However, John Fitzpatrick, a witness for appellees, with a record of forty-six years as a surveyor of mountain land, stated in his deposition that, as a practical surveyor, he would be unable to locate the land under which the minerals were conveyed from the description in the conveyance to T. P. Trigg, Trustee, by Joab H. Begley and his wife, unless he could trace the deeds mentioned therein. These deeds, it has been pointed out, were unrecorded and are therefore unavailable.

On cross-examination, Fitzpatrick testified that appellees' land was once a part of a very large tract owned by Elijah Begley, and that it at one time adjoined the latter's boundary. This evidence indicates beyond doubt, appellant contends, that the land in controversy is the same as that embraced in appellant's deed to the mineral rights,

since in each conveyance the tract is described as adjoining the land of Elijah Begley. However, we do not consider this fact alone conclusive, because Elijah Begley owned land extending over a widespread area and appellant's mineral rights could just as well lie under land somewhere else on Gay's Creek adjoining other property of Elijah Begley.

Appellant advances another set of facts to support its alleged ownership of the minerals under appellees' land. It points out that in the deed to T. P. Trigg, Trustee, under which it claims there was an express grant of " * * * enough small timber for mining purposes" along with the minerals and mining rights, and that in the deed of the surface, of a later date, to John E. Sandlin, appellees' predecessor in title, this reservation appears: "First parties having heretofore sold the mineral and coal and timber under 14 inches to a company, now reserve same in this deed, * * *." Appellant argues that the reservation of "timber under 14 inches" in the latter deed ties in with the grant of "small timber" in the former instrument, thus proving that the two deeds conveyed interests in identical property, and especially must this be the case, appellant insists, since Joab H. Begley and his wife were the grantors in each instrument. It is to be noted that the grant of timber was to a trustee, who was an individual, whereas the reservation in the later deed states that "timber under 14 inches" had been sold to a "company". No evidence was introduced to harmonize the discrepancy existing in this language of the two deeds. More than that, the proof is uncontradicted that the mineral rights of appellant and the land of appellees came down to each through a different chain of title. Accordingly, we find it impossible to accept a mere conjecture that would cancel out a proven fact.

Appellant relies upon Virginia Iron, Coal and Coke Company v. Combs, 186 Ky. 261, 216 S.W. 846, and Combs v. Virginia Iron, Coal and Coke Company, 197 Ky. 476, 245 S.W. 896, to maintain its argument that the description in the deed from T. P. Trigg, Trustee, is sufficiently definite to enable one to locate its land. We do not consider the two cited cases applicable here because, although the description in each deed in the two opinions did not set forth a definite boundary, both did refer to another deed or patent from which a sufficient description could be ascertained. Appellant's conveyance does not give as its source of title any other deed, so far as we know, that is in existence.

 Viewing this case in the light of all the facts, and particularly with reference to the language of the deeds in controversy, we are of the opinion that appellant has failed to establish its claim to the minerals and mining rights underlying appellees' land, especially since the description in appellant's deed is so vague and uncertain that one cannot locate the land therefrom.

Wherefore, the judgment is affirmed.